**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Samuel J. Bourne

    v.                                    Civil No. 10-cv-393-LM

John R. Arruda, Jr., et al.


**O R D E R**

Currently before the court in this case, filed by pro se plaintiff Samuel J. Bourne, are the following motions: (1) a motion to dismiss and for costs and fees (doc. no. 30) filed by defendants John R. Arruda, Jr., Michael Brooks, and the Town of Madison; (2) Bourne's motion to strike the motion to dismiss (doc. no. 32); and (3) Bourne's motion for leave to supplement his first amended complaint (doc. no. 50). Additionally, the parties filed proposed discovery plans (doc. nos. 23 and 24).

In support of their motion to dismiss and for costs and fees, defendants filed a supplemental memorandum and a reply (doc. nos. 31 and 45). Bourne filed an objection (doc. no. 34), three supplemental opposition memoranda (doc. nos. 33, 35, and 46), numerous exhibits (doc. nos. 36 and 37), and a surreply (doc. no. 49).

Responding to Bourne's motion to strike, defendants filed an objection (doc. no. 38) and requested an award of their fees and costs.  Bourne filed a reply (doc. no. 41).

Defendants objected (doc. no. 51) to Bourne's motion to supplement his complaint.  Bourne filed a reply thereafter (doc. no. 53).

For reasons set forth below, the motion to dismiss (doc. no. 30) is granted in part and denied in part, the motion to strike (doc. no. 32) is denied, and the motion to supplement the complaint (doc. no. 50) is granted.[1]  Each party shall bear its own costs and fees.  Bourne shall file the supplement to the complaint within ten days of the date of this Order, and defendants shall file an answer to the amended complaint and the supplement within twenty days of the date of this Order, as specified below.

## Background

Bourne, a Massachusetts resident, has been involved in litigation for many years concerning property in Madison, New Hampshire.  See, e.g., Bourne v. Town of Madison, No. 05-cv-365-

---

[1] By virtue of the parties' consent to the magistrate judge's jurisdiction over this case, this court may issue a dispositive ruling on the motions at issue.  See 28 U.S.C. § 636(c); Notice of Consent to Jurisdiction (doc. no. 17); see also Defs.' Objection (doc. no. 44), at 2 (noting consent of all parties to magistrate judge's jurisdiction).

JD (doc. no. 206) (D.N.H. May 12, 2010) (discussing related cases), appeal docketed, No. 10-1718 (1st Cir. June 15, 2010). The original dispute underlying these cases concerned access to certain trails on Bourne's property in Madison.  Defendants assert that Bourne has filed at least seven suits against the Town or its selectmen.

Selectmen are elected officials in New Hampshire towns charged with managing town affairs and performing duties prescribed by law.  N.H. Rev. Stat. Ann. ("RSA") § 41:8. Defendants Arruda and Brooks are selectmen for the Town of Madison.  The case at bar concerns remarks that Arruda and Brooks made about Bourne at public meetings of the Madison Board of Selectmen.

## Discussion

I.   Motion to Strike

   A.   Plaintiff's Contentions

In the motion to strike (doc. no. 32), Bourne urges the court to strike defendants' motion to dismiss in its entirety. Bourne asserts that defendants did not file an answer in response to his complaint, and that their motion to dismiss includes, as exhibits, orders issued in the state court litigation that Bourne considers irrelevant to the case at bar. Bourne further requests that this court either direct defendants

3

to file an answer, or direct that the court enter a default
judgment for plaintiff due to defendants' failure to file an
answer.

Federal Rule of Civil Procedure 12(b)(6) allows a party to
respond to a complaint by filing a motion asserting that the
pleading fails to state a claim.  The filing of a motion to
dismiss before the due date for an answer to the complaint
alters the time line for filing the answer.  See Fed. R. Civ. P.
12(a)(4).  Defendants here had no duty to file an answer before
their Rule 12(b)(6) motion was resolved.  See id.

Defendants filed their motion to dismiss the amended
complaint in a timely manner, before their answer was due.  The
motion does not include any facially insufficient defenses or
scandalous or impertinent materials that should be stricken.
See Fed. R. Civ. P. 12(f).  Accordingly, the motion to strike is
denied.

B.   Defendants' Request for Fees and Costs

Citing Fed. R. Civ. P. 11(b), defendants have requested
that this court sanction Bourne for filing the motion to strike.
A motion for sanctions under Rule 11(b) must be made separately
from any other motion.  See Fed. R. Civ. P. 11(c)(2).  The court
may also, on its own initiative, order a party to show cause why

certain conduct known to the court should not be deemed a Rule 11 violation.  <u>See</u> Fed. R. Civ. P. 11(c)(3).

Here, defendants did not file a separate motion for sanctions.  Considering Bourne's pro se status, the court concludes that sanctions against Bourne are not appropriate at this time.  Accordingly, each party must bear its own costs and fees in litigating the motion to strike.

II.  <u>Motion to Dismiss</u>

To determine if the complaint states any claim upon which relief could be granted, under Fed. R. Civ. P. 12(b)(6), the court must decide whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  <u>Ocasio-Hernández v. Fortuño-Burset</u>, No. 09-2207, 2011 WL 1228768, *8 (1st Cir. Apr. 1, 2011) (citations omitted).  A "short and plain statement" needs "only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Id.</u> (citations omitted).  In addition, to "'show' an

entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Id. (citations omitted). "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Id.

"In resolving a motion to dismiss, a court should employ a two-pronged approach." Id. at *9.  First, the court should identify and disregard statements in the complaint that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted).  The court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Iqbal, ___ U.S. at ___, 129 S. Ct. at 1949 (citation omitted).  A plaintiff may not avoid dismissal by pleading "allegations that merely parrot the elements of the cause of action." Ocasio-Hernández, 2011 WL 1228768 at *9.

The second prong of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, to determine if the claim is plausible. Id.  "The make-or-break standard . . . is that the combined allegations, taken as true, must

6

state a plausible, not a merely conceivable, case for relief."
Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir.
2010).

Evaluating the plausibility of a claim is a "context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense." Iqbal, ___ U.S. at ___,
129 S. Ct. at 1950 (citation omitted).  In doing so, the court
may not disregard properly pleaded factual allegations or
"attempt to forecast a plaintiff's likelihood of success on the
merits." Ocasio-Hernández, 2011 WL 1228768 at *9.  A claim
based on properly pleaded facts may be plausible "'even if it
strikes a savvy judge that actual proof of those facts is
improbable.'" Id. (citation omitted).  "The relevant inquiry
focuses on the reasonableness of the inference of liability that
the plaintiff is asking the court to draw from the facts alleged
in the complaint." Id.

In this case, this standard of review must be applied with
due regard for plaintiff's pro se status.  Pro se pleadings are
construed liberally, to avoid inappropriately stringent rules
and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S.
89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429
U.S. 97, 106 (1976), to construe pleadings liberally in favor of
pro se party); Castro v. United States, 540 U.S. 375, 381 (2003)

(courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).

    A.    <u>Defamation Claims Asserted in Amended Complaint</u>

Bourne has asserted that defendants defamed him at the June 2010 public meeting, in the following manner:

1.    Arruda described Bourne as a terrorist.

2.    Arruda implied that Bourne engaged in criminal conduct in altering a "town document," that is, a Town road waiver agreement, despite knowing that Bourne's attorney revised the agreement before sending it to the Town for signature.

3.    Arruda implied that Bourne had brought a forged document to court, namely, a cover letter to the road waiver agreement, which differed from the version of that cover letter in the Town's possession.

4.    Arruda defamed Bourne, implying that he had been reprimanded by the court, in paraphrasing a colloquy between Bourne and a state court judge.

5.    Arruda implied that Bourne was deceitful, in stating that "people who don't really know, they might even get to believe this guy after a while."

6.    Arruda implied that Bourne was a liar in characterizing his letter to the editor as nonsense, innuendo, and junk.

7.    Arruda implied that Bourne was a liar in characterizing his letter to the editor as libelous.

8.    Brooks implied that Bourne was a liar in stating, as to Bourne's letter, that "[i]t's almost like an article in the newspaper, where the . . . reporter . . . connects this to this but there's no real connection in real life."

9.    Brooks defamed Bourne by stating that (a) Bourne is "holding a bag full of nothing"; (b) Brooks is waiting for the court to tell Bourne that he filed a case in the wrong

"venue," and (c) "nobody is slapping [Bourne] down."
Defendants contend that the cited remarks are not actionable.[2]

### 1.   Actionable Defamation

A plaintiff in New Hampshire proves defamation by showing
that defendants failed to exercise reasonable care in
publishing, without a valid privilege, a false and defamatory
statement of fact about the plaintiff to a third party.  See
Pierson v. Hubbard, 147 N.H. 760, 763, 802 A.2d 1162, 1165
(2002).  Publication means communication of the statement to a
third party.  See Duchesnaye v. Munro Enters., Inc., 125 N.H.
244, 253, 480 A.2d 123, 127 (1984).  A statement is defamatory
if it tends to lower plaintiff in the esteem of any substantial
and respectable group of people.  Moss v. Camp Pemigewassett,
Inc., 312 F.3d 503, 507 (1st Cir. 2002) (citing Nash v. Keene
Publ'g Corp., 127 N.H. 214, 219, 498 A.2d 348, 351 (1985)).

Determining whether a statement is actionable is a question
of law for the trial court to consider in the first instance in

---

[2] The statements at issue appear in an unofficial transcript
of a Board of Selectmen meeting, appended to the amended
complaint as Exhibit D (doc. no. 21-4).  The content of that
transcript, which is not disputed, may be considered in
connection with the motion to dismiss.  See Young v. Lepone, 305
F.3d 1, 11 (1st Cir. 2002) (fate of motion to dismiss generally
depends on allegations contained within four corners of
complaint, but may be expanded to include undisputed information
contained within exhibits attached to or referenced in
complaint).

light of the context of the publication as a whole. <u>Nash</u>, 127

N.H. at 219, 498 A.2d at 351; <u>see also</u> <u>Faigin</u>, 978 F. Supp. at

424. "[A] statement of opinion is not actionable . . . unless

it may reasonably be understood to imply the existence of

defamatory fact as the basis for the opinion." <u>Nash</u>, 127 N.H.

at 219, 498 A.2d at 351 (citations omitted); <u>Riley v. Harr</u>, 292

F.3d 282, 289 (1st Cir. 2002) (false statement is not actionable

if "'it is plain that the speaker is expressing a subjective

view, an interpretation, a theory, conjecture, or surmise,

rather than claiming to be in possession of objectively

verifiable facts'" (citations omitted)); <u>Faigin v. Kelly</u>, 978 F.

Supp. 420, 424 (D.N.H. 1997). If the opinion is based upon a

fully disclosed factual basis, and cannot be reasonably

understood to imply the existence of any other undisclosed

facts, then the opinion will not be deemed actionable. <u>See</u>

<u>Pease v. Tel. Publ'g Co., Inc.</u>, 121 N.H. 62, 66, 426 A.2d 463,

466 (1981); <u>see also</u> <u>Riblet Tramway Co. v. Ericksen Assocs.,</u>

<u>Inc.</u>, 665 F. Supp. 81, 84 (D.N.H. 1987). Where, however, an

average reader or listener could reasonably understand the

statement to be either an inactionable opinion or to be based

upon undisclosed facts, "the issue may properly be left to the

jury's determination." <u>Pease</u>, 121 N.H. at 65, 426 A.2d at 465.

There are limits imposed by the First Amendment on the type of speech that can be the subject of a defamation action.  See Milkovich v. Lorain Journal Co., 497 U.S. 1, 17 & 20 (1990).  "[L]oose, figurative" language, "lusty and imaginative expression[s] of contempt," "rhetorical hyperbole," "vigorous epithet," and statements that "cannot 'reasonably [be] interpreted as stating actual facts' about an individual" are not actionable.  Id.

A statement alleged to be defamatory is not actionable if it is substantially true.  See Thomas v. Tel. Publ'g Co., 155 N.H. 314, 335, 929 A.2d 993, 1013 (2007).  The "literal truth of a statement is not required so long as the imputation is substantially true so as to justify the gist or sting of the remark."  Faigin, 978 F. Supp. at 425 (internal quotation marks and citations omitted).  It is rarely appropriate to determine whether a statement bears "substantial truth" on a motion to dismiss; an issue of substantial truth invites a fact-specific inquiry into whether any deviation from exact truth was material or substantial.  See id.

    2.  Arruda's Statements

       a.  Terrorist

Arruda's reference to "terrorists" appears in a discussion of Bourne's litigation tactics.  The statement followed Arruda's

assertion that the Town and its insurer had expended large sums in litigation with Bourne.  After noting that Arruda first met Bourne in court and not at a selectmen's meeting, Arruda stated, "I guess you can stand outside the fence and lob hand grenades in.  I mean, you talk about terrorists. . . . [T]hat's exactly what's going on here."  Ex. D, Tr. at 9 (doc. no. 21-4 at 12).

No reasonable listener, attending to the context, could understand Arruda's statement to be based on actionable, undisclosed defamatory facts regarding Bourne.  The tenor of this discussion, as well as the context, regarding Bourne's persistent litigation and letter writing, do not suggest Arruda possessed facts linking Bourne to hand grenades or terrorist activities.  The only reasonable interpretation of the statement is that it was Arruda's hyperbolic expression of his opinion about Bourne and his litigation tactics.  As such, the statement cannot reasonably be construed as actionable.  Cf. Milkovich, 497 U.S. at 21 ("loose, figurative, or hyperbolic language" and "general tenor" of article could negate impression of writer's seriousness in accusing plaintiff of perjury).  Accordingly, the defamation charge based on this statement fails to state a claim upon which relief may be granted, and the motion to dismiss is granted as to that statement.

b.   <u>Altered Town Document</u>

Arruda's statement that Bourne "altered a town document" appears in Arruda's description of his first encounter with Bourne.  Arruda had been asked to "briefly review the status of the court case or court cases" involving Mr. Bourne.  Am. Compl., Ex. D, Tr. at 6 (doc. no. 21-4 at 9).

> First time I met Mr. Bourne was in a courtroom. . . . Never came to the Board of Selectmen once with his issue, not once.  We met in the court of law, after he had altered a town document.  A Class VI (roadway) [sic] was -- was altered.  [The] Board of Selectmen didn't pick it up, because we never figure our documents would ever be altered.  We missed it.  We signed it.  When we realized what would happen after he put a gate up, [we] contacted counsel.  We went to court.  But we had -- prior to going to court, we had a letter delivered to (inaudible) a cover letter that said that . . . the Board of Selectmen, noting changes, would agree to these changes, something, paraphrasing. . . .

Am. Comp., Ex. D, Tr. at 6-7 (doc. no. 21-4 at 9-10).

Focusing on the mistaken impression that Arruda may have imparted when he said that Bourne altered the Town document despite knowing that Bourne's counsel was the one who revised the roadway agreement, Bourne contends that the statement is actionable and defamatory because it implies that Bourne engaged in criminal conduct in altering a Town document.  Whether a statement can be construed to be defamatory is an issue of law for the court.  <u>See</u> <u>Thomas</u>, 155 N.H. at 338, 929 A.2d at 1015 (citation omitted).

13

> An action in libel cannot be maintained on an
> artificial, unreasonable, or tortured construction
> imposed upon innocent words, nor when only
> 'supersensitive persons, with morbid imaginations'
> would consider the words defamatory.  'No mere claim
> of the plaintiff can add a defamatory meaning where
> none is apparent from the publication itself.'

Catalfo v. Jensen, 657 F. Supp. 463, 366 (D.N.H. 1987)

(citations omitted).  "'Words may be found to be defamatory if

they hold the plaintiff up to contempt, hatred, scorn or

ridicule, or tend to impair his standing in the community.

Imputations of criminality generally fit the bill.'"  Thomas,

155 N.H. at 338, 929 A.2d at 1015 (quoting Burke v. Town of

Walpole, 405 F.3d 66, 94-95 (1st Cir. 2005)).

Reading the statement in context, the court can find no

basis for finding any implication of criminal misconduct within

the cited passage.  The broader context for the comments

includes Arruda's opinion that it has been expensive to litigate

against Bourne, and that the litigation has not been especially

determinative ("The only thing that changed on that road is the

fact that we can't run vehicles over [the road].  It is still a

town easement.  We still have a right to travel over it."  Am.

Compl., Ex. D, Tr. at 8 (doc. no. 21-4 at 11)).  The text does

not refer to any threatened prosecution of Bourne or cite any

criminal laws potentially violated by Bourne.[3]  Nothing in the
quoted text or the context insinuates that Bourne engaged in any
criminal activity relating to altering a town document
concerning the road.

Notwithstanding the lack of any insinuation of criminal
misconduct, Arruda's comments can be construed, in context, to
imply that Bourne took unfair advantage of the Town.  The
transcript may be construed to indicate that Arruda believed
Bourne engaged in underhanded practices, that he duped Town
officials, who never figured that their documents would ever be
altered.  See Thomson v. Cash, 119 N.H. 371, 374, 402 A.2d 651,
653 (1979) (whether words susceptible of being construed to
imply fraud or wrongdoing were used in "the defamatory sense is
a question of fact for the jury").  The context further
indicates that Arruda, the selectmen, and Town counsel
considered Bourne's conduct actionable, which further shows that
the quoted language could be construed to imply Bourne's
misconduct in altering a document.  Without ruling at this time

_____

[3] The remainder of Arruda's comments relating to the
lawsuits and the document concern the circumstances leading up
to Bourne accusing the Board of forging Bourne's signature on a
cover letter in the Town's files, Arruda's denial of wrongdoing,
and Arruda's characterizing the litigation with Bourne as
expensive but essentially fruitless.  The comment ends with the
rhetorical flourish comparing Bourne with a terrorist, which is
not actionable, for reasons stated above.  See Am. Compl., Ex.
D, Tr. at 7-9 (doc. no. 21-4 at 10-12).

on any defense that may be available, including substantial
truth or privilege, the court finds that Bourne has stated a
viable defamation claim based on the comment that Bourne had
altered a Town document.  Accordingly, the motion to dismiss is
denied as to this statement.

       c.   <u>Forgery</u>

Bourne presented a revised road waiver agreement and a cover
letter in a state court proceeding.  That cover letter differed
from the cover letter Bourne sent to the Town, attached to the
same revised agreement.  Arruda, in describing his recollection of
reviewing the Town's draft of the letter, stated,

> I came here and asked . . . (if we had) a cover letter
> to that uh altered document.  And uh – and I remember
> very clearly.  I was standing at the counter, (she
> pulled) out a file, and she said, "Geez, I don't see
> one."  And then a moment later she says, "Oh, wait a
> minute.  It's stapled on the back." . . . I said,
> "Could I see that?"  She showed it to me.  Said
> nothing about changes.  There were [sic] nothing about
> changes.  It was -- just said, "See attached."  When
> we got to court, Mr. Bourne had another letter, that
> noted -- said, "Note changes."  And ours did not.
> This is the forged document.

Am. Compl., Ex. D, Tr. at 7 (doc. no. 21-4 at 10).

"'Whether a communication is capable of bearing a
defamatory meaning is an issue of law [for] the Court.  Only if
the Court determines that language is defamatory is there then
the question for the jury whether the communication was in fact

understood by its recipient in the defamatory sense.'" Thomas,
155 N.H. at 338, 929 A.2d at 1015 (citation omitted).  To
evaluate whether words may be defamatory, the court must
construe the words in context.  See Moss, 312 F.3d at 509.

The context of these comments belies Bourne's assertion
that Arruda's reference to a forgery was actually an accusation
against Bourne.  Before Arruda made the "forged document"
comments he had stated, among other things, that Bourne had
accused Arruda and other selectmen of forging Bourne's
signature; Arruda denied the accusation and stated that it was
thoroughly investigated and never proven.  See Am. Compl., Ex.
D, Tr. at 3-5 (doc. no. 21-4 at 6-8).

Arruda followed up on the quoted text by describing how
Bourne had been confronted in court with the Town's version of
the letter, and that Bourne and the judge had engaged in a
colloquy.  Arruda noted: "And from that day forward, [Bourne]
has accused the Board of Selectmen of forging that document."
Am. Compl., Ex. D, Tr. at 8 (doc. no. 21-4 at 11).  Arruda
concluded his remarks about the forgery accusation by stating
that he did not "have the will or the talent to forge a
document," id., and by noting that a letter from Bourne to the
Board including the forgery accusation had been one ground upon

which the Board had considered suing Bourne for defamation in the past.

Construed in context, Arruda's "forged document" statement cannot be construed as defaming Bourne.  Arruda's statement: "This is the forged document," taken in context, can only be reasonably understood to mean "this is the document that Bourne accused the Town of forging."  No reasonable factfinder construing the statement in context, therefore, could find a defamatory meaning directed at Bourne.  Accordingly, Bourne has failed to allege facts sufficient to state a viable defamation claim as to Arruda's "forged document" statement.  The motion to dismiss is granted as to this statement.

### d.   Imprecision in Paraphrasing Colloquy

Bourne alleges that Arruda defamed him in describing a colloquy between Bourne and the judge in state court, which occurred during the Town's cross-examination of Bourne in the lawsuit concerning the "altered" town road waiver agreement. The trial transcript attached to Bourne's complaint as Exhibit I reveals that Town counsel first elicited Bourne's admission that his signature appeared on a draft of the cover letter transmitting the revised road waiver agreement, retrieved from the Town's files.  Counsel then asked Bourne to admit that the draft of the cover letter in Bourne's possession differed from

the Town's, because the Town's draft did not say, "Enclosed is the revised form," as Bourne's copy did.  The judge directed Bourne to answer counsel's question, as set forth below:

> [Town counsel]:  And, in fact, Mr. Bourne, instead of saying enclosed is the revised form, [the Town's draft] says enclosed is the signed form, does it not?

> [Witness]:  I'll have to object to that.

> [Court]:  Just answer the question, sir.

> [Witness]:  Because the one that I have here is the one we got from our computer, which does state revised, and far as I know, we sent it in as revised. Whether or not anybody at the town manipulated that and then copied it, I cannot say that, but far as I know, that is not the exact one I sent.  This would be the one here, which does say revised on it.

Am. Compl., Ex. I (Ct. Hr'g Tr., Feb. 10, 2003) (doc. no. 21-9) at 10.

During the June 2010 Selectmen's meeting at issue, Arruda described the colloquy as follows:

> [W]hen we got to Court, Mr. Bourne had another letter, that noted – said, "Note changes."  And ours did not. This is the forged document.  Uh when he was on the stand, the judge asked him – it was Judge O'Neil . . . -- asked him very clearly, "Are these your signatures Mr. Bourne?"  The next word out of his mouth, as laughable as it was, was he said to the judge, "I object."  I thought it was funny.  And it's not even funny anymore.  I object.  The judge says, "You don't get to say that.  You will now give us a straight answer."  And from that day forward, he has accused the Board of Selectmen of forging that document.  I don't have the will or the talent to forge a document, ever. . . .

Am. Compl., Ex. D, Tr. at 7-8 (doc. no. 21-4 at 10-11).
Defendants have contended that any discrepancy between Arruda's
version of the colloquy and the statements appearing in the
trial transcript were immaterial, rendering the defendants not
liable because the matters asserted were substantially true.

    Without making any finding as to substantial truth, the
court notes that there are several discrepancies between the
transcript of the court hearing (doc. no. 21-9) and Arruda's
rendition of the colloquy appearing in Exhibit D (doc. no. 21-
4).  Arruda said that it was the judge who asked the original
question, while the transcript shows that it was Town counsel.
Arruda said that Bourne said, I object," when asked to identify
his signature on the documents at issue, when in fact he said he
would have to object to a question asking him to declare that
the Town's cover letter stated, "Enclosed is the signed form."
Arruda said that Bourne began "from that day forward" to accuse
the town of forging the cover letter, when, in fact, Bourne
objected to the question then volunteered that he "[could] not
say" whether someone in the town had "manipulated" the letter.
Finally, the judge told Bourne to "[j]ust answer the question,"
and did not specifically instruct him to give a "straight"
answer in lieu of objecting.

Bourne has not identified precisely what aspect of Arruda's paraphrase of the colloquy is defamatory.  Rather, he asserts generally that Arruda misquoted the judge and Bourne, and cites Masson v. New Yorker Mag., Inc., 501 U.S. 496 (1991), in contending that Arruda acted with actual malice, that is, with knowledge of the falsity of his statements or reckless disregard as to their truth or falsity.

Before considering whether Arruda can be said to have acted with actual malice -- the principle at issue in Masson, see id. at 513 (actual malice may be found where it can be proved that publisher misquoted plaintiff in a way that materially changed meaning of plaintiff's remarks) – a threshold issue here is whether Arruda's statements could be construed as defamatory. See Thomas, 155 N.H. at 338, 929 A.2d at 1015  (whether communication is capable of bearing defamatory meaning is issue of law, and only if court determines that language is defamatory is there question for jury regarding whether it was in fact understood as defamatory).  For reasons stated below, the court does not find Arruda's description of the colloquy to be capable of a defamatory construction.

Witnesses in court may fail to answer questions directly, fully, or completely.  Judges may intervene to ensure that witnesses answer the questions asked.  This appears to be what

happened during the colloquy at issue.  Describing Bourne as
having been the subject of such a colloquy is not per se a
slanderous allegation; a defamatory meaning cannot be found
unless the terms used in the description of the colloquy, read
in context, could be said to lower that witness's esteem among
any substantial and respectable group of people.  See Moss, 312
F.3d at 507.

        Here, Arruda described the colloquy in response to a
question asking him to talk about cases involving Bourne and the
Town.  He embedded the description of the colloquy within an
explanation of circumstances regarding Bourne's accusing the
Town of forging a document.  Arruda's description of the
colloquy may be construed to imply that the judge had
reprimanded Bourne once for objecting to a question regarding
the identity of his signature on a document, instead of
answering the question.  Construing Arruda's description of
Bourne's and the judge's statements in context, the court does
not find any reasonable basis upon which the description of that
interchange between the judge and Bourne may be deemed
defamatory.  Therefore, the court grants the motion to dismiss
as to Arruda's description of the colloquy.

e.   "People Who Don't Really Know"

In denying certain accusations against the selectmen in a letter written by Bourne regarding the poisoning of a dog, the firing of a police chief, and forgery of Bourne's signature, Arruda stated that "people who don't really know, they might even get to believe this guy after a while."  Arruda made the following statement to the audience at the selectmen's meeting:

> [F]or those of you who didn't read this, I'm not going to read this whole nonsense . . . but I am going to tell you there's a couple of issues in here that . . . cut really close to me.  And . . . the only things that have any value in my life is my name and my reputation.  And I don't [sic] to have a series of innuendos pointing at this board of selectmen and me, in particular, for doing some of these nefarious kind of acts.  And I expect that our attorney will represent us in bringing some legal action against this.  In no way did I ever, or this board of selectmen or any board of selectmen, have anything to do with the killing of Ms. Coffee's . . . dog, ever. I will stake my reputation and my life on that.  We never fired a police chief because of it, ever.  That was a totally separate issue.  This board of selectmen never, ever created a forgery, ever.  But yet, these kind of things are getting dragged up in the newspaper.  People who don't really know, they might even get to believe this guy after a while.  And quite frankly, I – I'm at the end of my rope.

Amend Compl., Ex. D, Tr. at 2-3 (doc. no. 21-4 at 5-6).  Arruda followed up on the quoted text by noting that he and two other selectmen had planned to file defamation claims against Bourne for similar remarks in the past, and that a lawyer asked them to

drop their claims six months before, so that the Town could more easily settle the entire matter.

The court finds that, construed in context, Arruda's statement, that "[p]eople who don't really know, they might even get to believe this guy after a while," is a conditional expression about who is more likely to believe Bourne, e.g., if a person does not know the truth, she or he is more likely to believe Bourne.  This statement implies that people who "know" the truth would not believe Bourne.

An opinion is not actionable if it is based upon a fully disclosed factual basis that cannot be reasonably understood to imply the existence of any other undisclosed, defamatory facts. See Pease, 121 N.H. at 66, 426 A.2d at 466.  Here, Arruda prefaced his allegedly defamatory statement by specifically denying matters asserted in the letter, namely, Bourne's accusations relating to the dead dog, the fired chief, and the forged document, and by labeling the rest "nonsense."  The list of reasons for Arruda's opinion does not imply any undisclosed defamatory facts, and the letter itself is in the public domain. Interested listeners could refer to the original letter, consider Arruda's specific denials of particular charges, compare those issues with Arruda's opinion about who might be likely to believe Bourne, and draw their own conclusions.  To

24

this extent, the statement of opinion resembles a hypothetical cited by the First Circuit to show that a conditional, speculative statement, based on disclosed facts, is not actionable.  See Gray v. St. Martin's Press, Inc., 221 F.3d 243, 251 (1st Cir. 2000) (citing Restatement (Second) of Torts § 566, at 174, ill. 5 ("'A says to B about C, a city official: 'He and his wife took a trip on city business a month ago and he added her expenses in as a part of his own.' B responds: 'If he did that he is really a thief.' B's expression of opinion does not assert by implication any defamatory facts, and he is not liable to C for defamation.'")).  By the same token, the cited statement regarding Arruda's opinion of Bourne's credibility, based upon a fully disclosed set of facts, is not actionable. The motion to dismiss the defamation claim as to this statement is granted.

### f.   Nonsense, Innuendos, and Junk

The next set of allegedly defamatory statements concern Arruda's description of Bourne's letter as containing "nonsense," "innuendos," and "junk."  Arruda made these remarks after stating that he intended to make a motion directing the Town to ask counsel to take action on the letter.  Arruda explained his opinion of the content of Bourne's letter by noting, that "[w]hile some of these things did happen, none of

25

these things are linked," and then listing matters in the
letter that he claimed were not in fact linked.

Bourne contends that Arruda's use of the terms "junk,"
"innuendos," and "nonsense," implied Bourne's dishonesty. Such
loose, figurative expressions are not generally actionable, as
they cannot be proved or disproved by evidence. The "vaguer a
term, or the more meanings it reasonably can convey, the less
likely it is to be actionable." Levinsky's, Inc. v. Wal-Mart
Stores, Inc., 127 F.3d 122, 129 (1st Cir. 1997) (under Maine
defamation law, calling competitor's store "trashy" was not
actionable); see also Flowers v. Carville, 310 F.3d 1118, 1127
(9th Cir. 2002) ("colorful waste metaphors -- . . . 'trash,'
'crap,' and 'garbage' -- are not defamatory under Nevada law");
Phantom Touring, Inc. v. Affiliated Pubs., 953 F.2d 724, 731
(1st Cir. 1992) (newspaper's referring to one of two similarly-
named theater productions as "fake" was not defamatory).

Similar opinion statements were found non-actionable in a
Superior Court action involving Bourne, see Bourne v. Town of
Madison, No. 2008-EQ-0027 (N.H. Super. Ct., Carroll Cnty., Feb.
5, 2010). In that case, Bourne sued Robert King for libel for
writing a series of letters published in the Conway Daily Sun
and sent to members of a local snowmobile club alternatively
describing Bourne as "delusional," a "nutcase," a person who

26

"spews falsehoods" at a rate meriting entry in the Guinness Book
of World Records, and a person who engages in "tedious,
repetitive false accusations" in the letters Bourne had
previously written to the Conway Daily Sun.  King called Bourne
a "con man," referring to Bourne's ability to manipulate a
newspaper reporter.  The court in that case reviewed each
statement in context and held that they were opinions, vigorous
epithets, and rhetorical hyperbole, not based on any undisclosed
facts, and not actionable as defamation.  The New Hampshire
Supreme Court affirmed the decision in that case "for reasons
articulated in the trial court's well-reasoned orders."  Bedrock
Realty Trust v. Town of Madison, No. 2010-0091 (N.H. Nov. 18,
2010).  Here, the terms "junk, "innuendo," and "nonsense" are
appropriately considered to be loose, figurative terms not
easily pinned down or specifically defined.

Moreover, the court notes that Arruda laid out a list of
reasons why he considered the letter to consist of nonsense,
innuendo, and junk.  Arruda specifically denied certain
accusations in the letter, including Bourne's accusation that
there was a connection between Arruda's testimony in support of
legislation and issues in Bourne's lawsuits.  Those matters, as
well as the letter, were all in the public domain.  An
interested listener could have investigated the issues and drawn

27

his or her own conclusions about the asserted relationships.

Statements of opinion expressed with such fully disclosed bases

are not actionable.  See Riley, 292 F.3d at 289.  Accordingly,

the motion to dismiss as to the terms "junk," "innuendo," and

"nonsense" is granted.

> g.    Falls within Guidelines of Libel

Bourne challenges Arruda's characterizing Bourne's letter

to the editor as "fall[ing] within the guidelines of libel," on

the ground that Bourne believes that that characterization

implied that Bourne published malicious lies.  The statement

arose during Arruda's expressed desire at a selectmen's meeting

to have the Board of Selectmen ask its attorney for an

"examination of legal options."  Arruda, in making those

statements, was not specifically seeking recourse against

Bourne.

Arruda, following his "guidelines of libel" statement,

recounted his previous attempt to sue Bourne for libel based on

a letter Bourne sent to Town counsel accusing the Board of

forgery.  Arruda noted that his attorneys had advised against

filing the suit against Bourne because the selectmen, and not

Bourne, notified the public about Bourne's accusation.  Arruda

contrasted that letter's publication by the selectmen with

Bourne's letter, sent to the newspaper for publication by Bourne himself, and ultimately disseminated through the newspaper.

Citing his own computer research, Arruda listed the following reasons for his conclusion that the published letter to the editor could be libelous:

> [W]hen someone puts something in writing – to the general public, that's a whole lot different than sending a letter to an attorney.  And it's a whole lot different than saying it face-to-face.  No one of these things accuses anyone of anything but uh, if you read it in its entirety, it's a linking of a series of what is considered nefarious kind of acts to the Board of Selectmen and, in particular, me.  This is now a public document.  This is now in writing.  This falls under the guidelines of libel.  So I'm asking that the attorney look into it.

Arruda offered his opinion concerning whether or not the letter constituted libel along with the basis for his opinion. Arruda qualified his assertion that Bourne's letter met the "guidelines of libel" by stating that he was asking to have the Town's attorney look into the issue.  Without suggesting that Arruda's legal conclusion is correct, the court notes that an interested listener could have considered Arruda's reasons, researched the issue, and drawn his or her own conclusions about the letter.  Further, Arruda made a statement of opinion, supported by disclosed facts which formed the basis of the opinion.  For those reasons, the statement is not actionable, and the motion to dismiss as to that statement is granted.

3.   Brooks's Statements

a.   No Real Connection

Bourne has alleged that Brooks defamed him in characterizing his letter to the editor as falsely intimating connections between unrelated events.  The statement at issue is part of Brooks's reaction to Arruda's expression of dismay over Bourne's letter to the editor, and Arruda's reasons for asking counsel to examine possible responses.  Brooks stated that he agreed with Arruda's sentiment and understood how it feels to be attacked personally.  He followed those remarks with the following description of his reaction to the letter:

> [W]hen I read this letter over the weekend -- I mean,
> of course I have the benefit of knowing some of --
> some of it.  I had personal involvement, because I was
> on the board at that time.  But in the beginning,
> obviously, I wasn't.  But uh I've lived here my whole
> life and I know what's going on.  And to link some –
> As [Arruda] says, he's trying to say, from A to B to C
> to D to E.  And there's [sic] so many things in here
> that just aren't even pertinent.  But they're a juicy
> tidbit.  It's almost like an article in the newspaper,
> where the – you know, the reporter, you know, connects
> this to this but there's no real connection in real
> life.  Uh I mean, it is discouraging.  So I will
> support an investigation to [sic] this to see if there
> is anything we can do.

Brooks expressed the bases for his opinion in a manner that left a reasonable listener free to examine the issues, in noting that the letter links issues that are not truly linked.  The letter at issue is in the public domain.  The opinion cited cannot be

30

said to have been based on any undisclosed, defamatory facts
about Bourne.  Accordingly, the motion to dismiss as to this
statement is granted.

> b.   <u>Bag of Nothing, Wrong Venue, Slapping Down</u>

Bourne claims that Brooks defamed him by opining that
Bourne was "holding a bag full of nothing," that Bourne had
filed prior litigation in the wrong venue, and that nobody was
"slapping" him down.  The statements at issue followed Brooks's
statement that he agreed with the idea of not responding to
Bourne's letter through the newspaper, "[b]ecause that's what
[Bourne] wants.  He wants to draw us out.  Because right now
he's standing holding a bag full of nothing."  Brooks then
described Bourne's recent lack of success in litigation and
stated, "I'm just waiting for somebody to tell [Bourne] that the
venue's improper, et cetera, et cetera, et cetera."  Brooks
concluded these remarks with a critique of the courts:

> I'm very disappointed in our legal system.  There have
> been decisions made that, quite frankly, are - got [sic]
> all kinds of holes in them.  Instead of really putting
> the hammer down and saying either the town's right or
> the town's wrong or [Bourne's] right, whatever - It's -
> nothing's been concrete.  And that's what bothers me.
> And this guy is just allowed to proceed with suit after
> suit after suit.  And nobody is slapping him, saying,
> "This is vexatious.  It's personal.  It's baseless under
> the law," which most of it is.  But nobody is slapping

> him down.  Because the legal system handles pro se
> litigants with kid gloves. . . .

Amend Compl., Ex. D, Tr. at 13 (doc. no. 21-4) at 16.

Brooks's criticism of the courts for not "slapping" Bourne down, and his view that Bourne is "holding a bag full of nothing" are metaphors, the sort of loose, figurative language that is generally not actionable as defamatory.  See Riley, 292 F.3d at 289.  Moreover, to the extent that the statements at issue may be construed to be opinions based on facts, including Brooks's prediction that a court might rule against Bourne on the question of venue, the bases for these opinions, Bourne's court filings, the court decisions at issue, and the contents of the letter to the editor which Brooks deemed "a bag full of nothing," are in the public domain.  Listeners were free to research those issues and draw their own conclusions.  Brooks's statements expressing his opinions based on fully disclosed facts, and consisting in part of loose, figurative language, are not actionable.  Accordingly, the motion to dismiss as to Brooks's statements is granted.

### 4.   Town's Liability for Acts of Officials

Municipalities may not be held vicariously liable under § 1983 for their employees' actions.  See Connick v. Thompson, ___ U.S. ___, ___, 131 S. Ct. 1350, 1359 (2011).  A municipality

may be held liable under a theory of respondeat superior,
however, for the tortious conduct of municipal officials,
including elected officials, if plaintiff can prove that the
municipal official was acting within the scope of his employment
at the time he committed the alleged tort.  See Porter v. City
of Manchester, 155 N.H. 149, 155, 921 A.2d 393, 399 (2007).  To
prove this, a plaintiff must show, among other things, that the
tortious conduct at issue was actuated, at least in part, by an
intent to serve the municipality.  Id. (city may be liable for
tortious conduct of elected employee, where evidence suggested
that employee's motives included intent to serve city
interests).  The facts alleged here, and the reasonable
inferences, taken as true, indicate that Arruda made the
statements at issue in part to serve the interests of the Town.
Accordingly, and at this early stage, the defamation claims
asserted against the Town are viable as to those statements
found to be actionable and are dismissed as to the statements
found not to be actionable.

        B.   Retaliation Claims Asserted in Amended Complaint

        Bourne asserts that Brooks made a statement during the
public meeting that constitutes a threat of violence.
Specifically, Bourne claims that Brooks's pledge to "pick up
arms" and to "stand beside" Arruda in defense of their

33

reputational honor, constitutes a threat of violence against
Bourne.  Based on that statement, and the defamatory statements
made at the June 2010 public meeting by Arruda and Brooks,
Bourne asserts that defendants are liable for
retaliating against him for exercising his First Amendment right
to send a letter to a newspaper criticizing the Town.

Defendants apparently failed to construe the somewhat
jumbled presentation of claims in the complaint as including a
retaliation claim, and failed to make explicit their intent to
move to dismiss the retaliation claim, contending instead that
Brooks's remark was not defamatory and generally seeking
dismissal of all claims.  Bourne, in the documents filed in
response to the motion to dismiss, construed the motion as
intending to seek dismissal of all claims in the case, including
the retaliation claim.  <u>See, e.g.</u>, Plf.'s Mem. Of Law in Support
of Plf.'s Obj. to Defs.'s Mot. to Dismiss (doc. no. 35), at 9
("under the extreme circumstances presented herein and by the
vicious attack upon the Plaintiff in retaliation for informing
the public, defendants are <u>not</u> entitled to dismissal of any
claims" (emphasis in original)).  In the interest of expediency,
the court will consider whether Bourne has stated a viable claim
of retaliation sufficient to survive a motion to dismiss.

### 1.   Elements of Retaliation

To establish a First Amendment retaliation claim, plaintiff must show: (1) that he was engaged in activities protected by the First Amendment, (2) that the defendant took an adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action.  See Cossette v. Poulin, 573 F. Supp. 2d 456, 459-60 (D.N.H. 2008).

### 2.   Protected Speech and Conduct

Bourne's letter to the editor expressed Bourne's view that Town officials had engaged in unethical conduct and had violated his property rights and civil rights.  In general, "the right to criticize public officials" is protected by the First Amendment. Jenkins v. Rock Hill Local Sch. Dist., 513 F.3d 580, 588 (6th Cir. 2008); see also N.Y. Times Co. v. Sullivan, 376 U.S. 254, 270 (1964) (noting background of "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials").  Activities protected by the First Amendment include criticizing public officials' conduct in a letter to the editor.  See Jenkins, 513 F.3d at 588 (mothers' criticism of school district's treatment of their children in letter to newspaper was protected speech); Eichenlaub v. Twp. of

35

Indiana, 385 F.3d 274, 284 (3d Cir. 2004) (landowner's speech at public meeting relating to zoning dispute was protected speech even if it concerned private grievance).  Bourne's letter to the editor constituted conduct protected by the First Amendment.

### 3.    Adverse Acts

De minimis reactions to protected speech will not satisfy the adverse-action element of a retaliation claim.  See Morris v. Powell, 449 F.3d 682, 685-86 (5th Cir. 2006).  A defendant's response to plaintiff's protected speech is not de minimis, however, if the conduct would deter an individual of ordinary firmness from exercising his or her First Amendment rights.  See id. at 686; cf. Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) ("Even 'relatively minor events' can give rise to § 1983 liability, so long as the harassment is not so trivial that it would not deter an ordinary employee in the exercise of his or her First Amendment rights.") (citation omitted).  The standard strikes a balance between two propositions:  "First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort – like any tort – requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment."  Mattox v. City of Forest Park, 183 F.3d 515, 519 (6th Cir. 1999).  The

standard involves an objective inquiry, "capable of being
tailored to the different circumstances in which retaliation
claims arise, and capable of screening the most trivial of
actions from constitutional cognizance."   Thaddeus-X v. Blatter,
175 F.3d 378, 398 (6th Cir. 1999).

The actions cited here as adverse, and causally related to
Bourne's exercise of his First Amendment rights, include:  (1)
the selectmen's convening the June 2010 public meeting in
response to Bourne's letter; (2) defendants' use of the meeting
to make allegedly defamatory statements; and (3) Brooks's
threat, expressed during that meeting, to take up arms.

### a.   Convening of Meeting

The convening of the meeting itself cannot be construed as
having more than a de minimis impact on a person of reasonable
firmness.  The convening of the meeting was a neutral act.  The
meeting at issue was a public forum, duly recorded, for the
stated purpose of seeing if the selectmen would ask the Town's
counsel to respond to Bourne's letter.  A reasonably firm person
intending to criticize Town officials would not be deterred from
exercising his or her rights for fear that Town officials might
publicly debate whether and how to respond to the charges.
Indeed such a response is a proper function of a government that
is responsive to citizen petitions and concerns.  To rule

otherwise would unfairly tether public officials and inhibit
public debate.  "It would be inconsistent with core First
Amendment principles and basic notions of fairness not to allow
[a government official] to respond to [such] allegations to the
extent his out-of-court comments were not defamatory . . . ."
Mezibov v. Allen, 411 F.3d 712, 722 (6th Cir. 2005).  Bourne's
claim alleging retaliation for convening the meeting is not
viable and is therefore properly dismissed.

                    b.    Defamatory Comments

     Defamatory or harassing comments may constitute an adverse
action sufficient to form the basis of a First Amendment
retaliation claim under § 1983, if the plaintiff has alleged
facts that show that the comments would chill a person of
ordinary firmness from engaging in protected speech.  See
Barton, 632 F.3d at 28.  Here, Bourne has asserted generally
that defendants intended to damage his reputation, and that
their actions injured his reputation and caused him harm.  Am.
Compl. (doc. no. 21) at 12.  Such allegations of generalized
reputational injury resulting from defamatory remarks have been
found insufficient to state more than a de minimis injury.  See
Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002)
(embarrassment, humiliation, and emotional distress that
plaintiff suffered as result of city councilors' "offensive,

                              38

unprofessional, and inappropriate" remarks were de minimis; the risk of suffering such injury due to defamation would not deter person of ordinary firmness from speaking out).

Plaintiff has stated viable defamation claims for certain remarks made about Bourne at a selectmen's meeting convened largely for that purpose.  Plaintiff has further alleged that those remarks were taken in response to his exercise of his First Amendment rights.  Plaintiff has failed, however, to allege sufficient facts to demonstrate that any embarrassment, reputational damage, or emotional impact he suffered as a result of the allegedly defamatory statements were more than de minimis injuries.  Plaintiff has therefore failed to state a viable claim of retaliation based upon the allegedly defamatory remarks made at the June 2010 meeting, rendering this claim properly dismissed.

### c.   Pick Up Arms

Bourne claims that Brooks's statement, pledging to "pick up arms," was an adverse act forming the basis for finding defendants liable for First Amendment retaliation.  The comment was made in the context of Brooks explaining his stake in the controversy between Bourne and the Town.  After highlighting the title of Bourne's letter, "Time to Demand High Ethical Standards for All Government Officials," Brooks stated:

> I try my utmost to make decisions in the best interest
> of the town of Madison.  Now you can certainly
> disagree with that on point on point [sic] and we can
> have an argument and we can walk away either agreeing
> to disagree or whatever but, to say that it's
> unethical . . . that crosses a line.  Which, as
> [Arruda] said, all you have, walking through life, is
> your name and your reputation.  And when somebody
> tries to sully that, I'll pick up arms and I'll stand
> beside you.

Arruda's use of the phrase "pick up arms" is a figure of speech.

Arruda uttered the phrase while speaking about defending his and

Brooks's reputations.  Even construing all inferences in

plaintiff's favor, the court finds that a person of reasonable

firmness would not be deterred from exercising his First

Amendment rights by hearing this comment.  Accordingly, Bourne

has not stated a viable claim of First Amendment retaliation

based on Brooks's "pick up arms" remark.  The motion to dismiss

this retaliation claim asserted against Brooks and the Town is

therefore granted.

   C.   <u>Remaining Claims in Amended Complaint</u>

   Bourne's remaining claims, asserted in the amended

complaint, are that defendants are liable for "gross negligence

by reckless conduct," that they violated their oaths of office,

and that they violated criminal statutes.

### 1.   Oath of Office

Bourne asserted in his amended complaint that Arruda and Brooks breached a duty owed to him, and elaborated on that claim in stating that the selectmen violated their oaths of office to uphold the law, as prescribed by RSA § 42:1 and Pt. 2, Art. 84 of the New Hampshire Constitution.  These authorities require municipal officials to take an oath swearing to uphold the federal and state Constitutions, and to discharge and perform all duties according to the best of their ability in conformity with federal and state law.  The superior court may order the dismissal of an official found to be in violation of the oath. RSA § 42:1-a (manner of dismissal of official found to be violating oath of office shall be by petition filed in superior court).

State law does not provide a private cause of action for damages for violations of the oath of office, and the court can find no other basis for asserting a separate claim in federal court based on such allegations.  Accordingly, defendants' motion to dismiss this claim is granted, and plaintiff's claim based on the selectmen's oath of office is dismissed.

### 2.   Gross Negligence

Bourne lists two counts in his amended complaint: "Slander, Defamation, and Libel" listed as Count One; and "Gross

Negligence by Reckless Conduct" listed as Count Two, which also
asserts a retaliation claim.  Defendants contend that Count Two
should be dismissed because it was asserted without first
seeking the court's permission, merely restates the defamation
claim, and alleges no other actionable claim.

As to whether the claim was asserted without the court's
leave, the court notes that Bourne properly filed the proposed
amended complaint along with a motion to amend, and the court
granted that motion.  Defendants are correct in contending that
the allegations of negligence in Count Two do not state a
separate, actionable claim.  Count Two simply reiterates and
amplifies claims already asserted in this case.  In Count Two,
Bourne has asserted that defendants' broadcasting of retaliatory
and defamatory statements was a knowing, intentional, reckless,
and premeditated act, undertaken with actual malice and the
intent to harm him.  Bourne's denomination of these allegations
as a separate claim of "gross negligence" is mistaken; the
averments simply allege facts that, if taken as true, may affect
defendants' liability for damages,[4] or defeat a defense of a

_____

[4] Plaintiff's allegations relating to actual malice appear
to anticipate a finding by this court that Bourne is a public
figure for purposes of this action.  A public figure must show
that the defendant acted with "actual malice" in defaming him or
her, which requires a showing of the defendant's subjective
awareness of the falsity or probable falsity of the statement,
rather than a showing of ill will.  See Thomas, 155 N.H. at 328,

conditional privilege.[5] Bourne has failed to state any separate cause of action in these allegations, apart from defamation and retaliation. As such the motion to dismiss the "gross negligence" count is granted. The court's dismissal of this claim is intended to streamline the pleadings by striking surplusage without limiting the issues or the scope of discovery in this lawsuit.

Similarly, the court declines to construe the allegations of criminal misconduct by defendants as separate claims.

929 A.2d at 1007 (citing N.Y. Times Co., 376 U.S. at 279-80). Whether Bourne was a public figure for a limited purpose is a question of law for the court to decide. See Thomas, 155 N.H. at 341, 929 A.2d at 1017 (individuals who "'thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved'" become public figures for a limited range of issues (citation omitted)). On this limited record, the court declines to rule on whether Bourne's participation in controversies in Madison rendered him a limited-purpose public figure.

[5] A conditional privilege may be defeated by a showing of ill will or intent to harm. See Thomas, 155 N.H. at 329, 929 A.2d at 1008. New Hampshire law recognizes a conditional privilege for making certain defamatory statements "'if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth,' provided that the statements are not made with actual malice." Simpkins v. Snow, 139 N.H. 735, 740, 661 A.2d 772, 776-77 (1995) (citation omitted); see also Supry v. Bolduc, 112 N.H. 274, 277, 293 A.2d 767, 769 (1972) (landowner's defamatory statements to zoning board may be conditionally privileged, given private interests at stake and "recognized public interest in encouraging open discussion of zoning matters at public hearings designed for that purpose"). While the evidence may ultimately show that a conditional privilege applied to the statements at issue, the matter is not before the court at this time.

Plaintiff lacks standing to prosecute defendants for a criminal offense, or to attempt to compel such a prosecution through a civil action.  See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989).

III. Motion to Supplement

Bourne's motion to supplement asserts that at a selectmen's meeting held on February 22, 2011, and rebroadcast on local television several times thereafter, defendant Brooks defamed Bourne.  Bourne claims the defamatory statement was Brooks's comparison of him to Carl Drega, thus implying that Bourne was a "danger to the community and to the lives of town officials." Supplement to Pl.'s 1st Am. Compl. (doc. no. 50-1 at 2).

Bourne further asserts that the Town has continued to fail to supervise or train Arruda and Brooks, and that a Town policy or custom has allowed Arruda and Brooks to continue to engage in such "illegal and offensive behavior."  Id. at 4.  These allegations relate to Brooks's February 2011 statement and also relate to the claims asserted against defendants in the underlying amended complaint, which focuses on the June 2010 public meeting.

44

Federal Rule of Civil Procedure 15(d) provides that, upon motion, reasonable notice, and just terms, the court may permit a party to serve a supplemental pleading setting out any event that happened after the date of the pleading to be supplemented. A motion to supplement is the proper vehicle for seeking leave to add allegations of later-occurring events, without altering the underlying issues or the identity of the parties. See Habitat Educ. Ctr. v. Kimbell, 250 F.R.D. 397, 401 (E.D. Wis. 2008) ("supplemental pleading" addresses events occurring after initial pleading and adds to such pleading, while "amended pleading" relates to matters occurring prior to filing original pleading and replaces it). The district court should grant a motion to supplement, if doing so would promote complete adjudication of a dispute between the parties, without causing undue delay, unnecessary expense, or unfair prejudice. See id.; 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1504 ("The purpose of [Rule 15(d)] is to promote as complete an adjudication of the dispute between the parties as is possible."); see also Mueller Co. v. U.S. Pipe & Foundry Co., 351 F. Supp. 2d 1, 2 (D.N.H. 2005) (standard to be applied to motion to supplement is essentially same as that applied to motion for leave to amend complaint). Motions to supplement are liberally granted. See Nkihtaqmikon v. Bur. of

Indian Affairs, 453 F. Supp. 2d 193, 201 (D. Me. 2006).

Defendants here object to the motion on both procedural and

substantive grounds, contending that plaintiff failed to comply

with the local rules and that the supplement should be denied as

futile.  See Mueller, 351 F. Supp. 2d at 2 ("denial of a

proposed supplement on the basis of futility" is proper).

    A.   Procedural Objections

    Defendants cite plaintiff's failure to seek counsel's

concurrence in the motion to supplement, and LR 15.1, concerning

the proper format of a motion to amend, as the bases for denying

the motion.  LR 7.1(c), in requiring parties to certify that

they sought concurrence before filing a motion, "serves an

important purpose of conserving the court's resources for

matters that are actually disputed."  Stonyfield Farm, Inc. v.

Agro-Farma, Inc., No. 08-cv-488-JD, 2010 WL 4455916, *1 (D.N.H.

Nov. 3, 2010).  The nature of defendants' objection and their

failure to show any willingness to concur in the relief

requested makes it clear that Bourne's failure to seek

concurrence had no real impact on the litigation.  Accordingly,

plaintiff's failure to comply with LR 7.1(c) will not result in

the court's denying the motion at issue in this instance.  See

Stonyfield Farm, 2010 WL 4455916, at *1.  Bourne is cautioned,

however, that he must comply with all local rules in the future,

including LR 7.1(c), so long as he continues to litigate matters
in this court, at the risk of suffering appropriate consequences
for failing to do so.

Defendants' second procedural objection is that Bourne did
not comply with LR 15.1, concerning the proper format for a
motion to amend a filing.  Defendants assert that they lacked
fair notice of the relationship between the supplemental facts
and Bourne's claims.  The court finds, however, that Bourne
substantially complied with LR 15.1, to the extent that a local
rule applicable to motions to amend may be deemed pertinent to a
motion to supplement.  Bourne filed a copy of the proposed
supplement and provided sufficient notice of the relationship
between the supplementary facts and the underlying claims to
enable defendants to file a response to the motion.
Accordingly, plaintiff's failure to comply completely with the
local rules provides no basis for denying the motion to
supplement.  See Castro, 540 U.S. at 381 (courts may construe
pro se pleadings to avoid inappropriately stringent rules and
unnecessary dismissals).

B.   Futility

Defendants' substantive objection to Bourne's motion is
that the proposed supplement fails to state a claim upon which
relief can be granted.  Specifically, defendants contend that

47

Brooks is absolutely immune from liability for his February 2011 remarks.  Defendants further contend that the statements at issue are opinion and hyperbole, not actionable defamation.

      1.   <u>Absolute Immunity</u>

"For reasons of public policy . . . courts have long recognized an absolute immunity for members of legislative bodies for acts in the performance of their duties."  <u>Pierson</u>, 147 N.H. at 764, 802 A.2d at 1166.  The New Hampshire Supreme Court has extended such immunity to cover a selectman's report at a town meeting regarding the police chief's termination.  <u>See id.</u> (citing <u>Voelbel v. Town of Bridgewater</u>, 144 N.H. 599, 600, 747 A.2d 252, 253 (1999) ("municipal officials, acting in a legislative capacity," are absolutely immune for comments made "during a town meeting" regarding "town matters")).  Finding that the selectmen's report was made at a "town meeting," that it involved issues arising from the selectmen's duties, and that it related to a matter of local importance properly before the town meeting, the court in <u>Voelbel</u> found the statements at issue to be absolutely privileged.  <u>See Pierson</u>, 147 N.H. at 764-65, 802 A.2d at 1166 (citing <u>Voelbel</u>, 144 N.H. at 600-01, 747 A.2d at 253).

In <u>Pierson</u>, the New Hampshire Supreme Court elaborated on the nature of the functions performed by boards of selectmen,

and contrasted "town meetings" with regular meetings of the
select board, in declining to find that a town clerk was
absolutely immune from liability for making comments during a
board of selectmen's meeting.  "The selectmen are officers who
form an executive that carries out certain statutory duties and
any orders enacted by the town meeting, which is the legislative
body" of the town.  Pierson, 147 N.H. at 765, 802 A.2d at 1167.
"Legislative decision-making is done at the annual town meeting,
or any town meeting specially warned by the board of selectmen."
Id. (citations omitted).  "Between town meetings, the board of
selectmen meet [sic] to carry out its function of managing the
'prudential affairs of the town' and performing duties otherwise
'by law prescribed.'"  Id. (quoting RSA § 41:8).  Finding that
the statements at issue were made in the clerk and selectmen's
performance of administrative or ministerial functions, and not
in performing any legislative function, the court found no basis
for deeming the town clerk absolutely immune from liability.
See Pierson, 147 N.H. at 765, 802 A.2d at 1167.

     Similarly, Brooks's "Drega" comments were made at a
February 2011 selectmen's meeting, not at any properly warned or
regularly scheduled annual Town meeting.  The comments addressed
a matter that Brooks apparently believed could arise at the Town
meeting, but did not constitute the discharge of any legislative

function.  The facts alleged in the complaint or asserted in
defendants' objection do not show that Brooks was engaged in any
debate over a matter up for a vote or properly before a
legislative body.  The context discloses no basis for finding
that Brooks made the comments at issue in a legislative
capacity, or in performance of any duty connected with a
municipal officer's legislative functions.  Accordingly, Brooks
is not absolutely immune from liability for the comments he made
at the February 22, 2011, selectmen's meeting.

### 2.   Opinion and Hyperbole

Defendants further contend that the statements at issue
constitute opinion and hyperbole and are not actionable
defamation under New Hampshire law.  See Nash, 127 N.H. at 219,
498 A.2d at 351 ("statement of opinion is not actionable . . .
unless it may reasonably be understood to imply the existence of
defamatory fact as the basis for the opinion") (citations
omitted); see also Pease, 121 N.H. at 66, 426 A.2d at 466
(opinion based upon fully disclosed factual basis, which cannot
be reasonably understood to imply existence of any other
undisclosed factual underpinnings, will not be deemed
actionable).

At issue here is a statement implying Brooks's belief that
Bourne was a potential "Carl Drega," an individual whose

disputes with state and local officials in northern New Hampshire led him to shoot and kill two state troopers, a judge, a newspaper editor, and to wound three others before he was killed by police in 1997.[6]  The statement could be reasonably construed as mere opinion.  Brooks couched his comment in terms of being "worr[ied] about a Drega situation . . . ."  Brooks did not state: "Bourne is a Drega."  On the other hand, and construing the facts in Bourne's favor, a reasonable factfinder could understand the statement to imply the existence of a defamatory fact as the basis of Brooks's opinion.  Brooks did not set forth the reasons for his opinion, apart from noting that Bourne had suffered a dismissal of claims filed in federal court, and that he might be angry.  The statement regarding a

---

[6] Reserving the right to dispute the transcript provided by Bourne in the future, defendants in their objection to the motion to supplement (doc. no. 51), reproduce the relevant portions of that transcript as follows, deleting certain comments of Brooks and the Town Meeting Moderator, George Epstein:

> [Brooks]: I'm trying to be prepared for . . . Well, I just -- I worry about a Drega situation is what I'm talking about, as far as -- . . . having your head, you know, on your shoulders if you see some angry dude walking through the door. . . . And I'm going to have the stage about four feet away from the wall so if we do need to jump down behind it we can . . . . -- we'll have a space to cover ourselves to reload.  (raps Aruda [sic] on arm with fist). . .
>    [Aruda] [sic]: (laughter)
>    [Brooks]: Probably nothing will happen, but . . . .

"Drega situation" is not patently a metaphor or hyperbole, and is thus dissimilar to Arruda's terrorist comment, given Brooks's apparent intent to warn the moderator about Bourne.  Brooks's attempt to defuse his comments with humor or some backpedalling at the end did not, as a matter of law, render the opinion incapable of imparting a defamatory meaning.  Accordingly, the court declines to find that the supplement at issue is futile; the facts alleged therein are minimally sufficient to state a cognizable defamation claim as to Brooks, and as to the Town under a theory of respondeat superior.

Plaintiff has alleged in the proposed supplement only matters arising after the initial pleading was filed, and the matters asserted therein provide grounds for plaintiff to assert further claims of defamation against the same defendants named in the amended complaint.  The court therefore concludes that the motion to supplement is properly founded.  Because granting the motion to supplement will not cause undue delay or unfair prejudice in this case, and will promote the interests of justice and judicial efficiency, the court grants the motion to supplement.  Bourne is granted leave to file the proposed supplemental complaint, as directed below.

IV.  <u>Fees and Costs</u>

Defendants have requested an award of costs and fees for "having been forced to defend against yet another meritless action" and for having to file a response to the motion to supplement.  Finding viable claims in the amended complaint and the proposed supplement, the court denies defendants' request for costs and fees.  Each party shall bear its own costs and fees in litigating the matters at issue.

<u>Conclusion</u>

The motion to supplement the amended complaint (doc. no. 50) is GRANTED.  Bourne shall file the supplement to the amended complaint within ten days of the date of this order.

The motion to dismiss the amended complaint (doc. no. 30) is GRANTED IN PART and DENIED IN PART.  The motion is granted, to the extent that the court dismisses the gross negligence claim, the oath of office claim, and the retaliation claims.  The motion is also granted as to all defamation claims asserted in the amended complaint against Brooks and the Town for Brooks's statements.  The defamation claims asserted against Arruda and the Town for Arruda's statements are also dismissed, except for the claim against Arruda and the Town based on

53

Arruda's statement that Bourne altered a town document.  The
motion is denied in all other respects.

The motion to strike (doc. no. 32) is DENIED.

Each party shall bear its own costs and fees in litigating
the matters at issue.

Defendants shall file their answer to the amended complaint
and to the supplement within twenty days of the date of this
order.

The parties filed alternative proposed discovery plans
(doc. nos. 23 and 24) prior to the litigation related to
defendants' motion to dismiss.  In light of this order, those
discovery plans are outdated and denied as moot.  The court
orders the parties to file updated proposed discovery plans
within twenty days of the date of this Order.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

June 9, 2011

cc:  Samuel J. Bourne, pro se
     Brian J.S. Cullen, Esq.

LBM:nmd

54