**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Samuel J. Bourne

     v.                            Civil No. 10-cv-393-LM

John R. Arruda, Jr., et al.

**O R D E R**

Before the court is plaintiff Samuel Bourne's motion (doc.
no. 57) seeking partial reconsideration of the court's June 10,
2011, order (doc. no. 55) granting in part and denying in part
defendants' motion to dismiss.  Bourne has asserted that the
court should reconsider those parts of the order dismissing
certain claims asserted in the amended complaint.  Defendants
object (doc. no. 61).

**Discussion**

A motion for reconsideration may be granted if the movant
has demonstrated that the order was based on a manifest error of
fact or law.  See United States District Court, District of New
Hampshire Local Rule ("LR") 7.2(e).  As defendants point out in
their objection (doc. no. 61), the motion to reconsider focuses
on Bourne's assertion that defendants acted with malice and
premeditation in convening a public meeting to talk about

Bourne, Bourne's litigation, and Bourne's criticism of the
selectmen.  The issues of malice and premeditation, however, are
not relevant to the court's bases for dismissing the claims at
issue.  <u>See</u> Order (doc. no. 55).  Those aspects of the motion
thus fail to show that the Order was based on any error.

Bourne raises several additional issues in the motion that
warrant further analysis:  (1) Bourne's assertion that defendant
Arruda's reference to a "police investigator" implied that
Bourne engaged in criminal conduct; and (2) Bourne's assertion
that defendant Brooks' rank and experience as a Marine gunnery
sergeant in Iraq, coupled with remarks made in February 2011,
show that in June 2010, Brooks' pledge to take up arms was a
retaliatory threat of violence.

I.   <u>Police Investigator</u>

In the order at issue, the court found that none of
Arruda's statements, cited by Bourne, could reasonably be
construed as implying that Bourne's writing a letter to the
editor was a crime.  Bourne in the motion to reconsider points
to a new section of the June 2010 meeting transcript, in which
Arruda refers to a "police investigator":

> I asked this meeting to be called after a . . . letter
> to the editor, which I never normally respond
> to. . . . I'm going to be asking the board to – uh
> somehow respond to this and not necessarily – I don't

> intend to respond to this in the newspaper.  I intend
> to have this responded to by . . . counsel.  If our
> counsel can't do this, we'll find other counsel that
> will.  And if we can't have a police investigator do
> it here locally, we'll find some police investigator
> to do it.  Uh if I have to take it to the state
> attorney general's office, I will.  This article's
> written by Mr. Bourne.  And we all know about Mr.
> Bourne.

Ex. D to Am. Compl., at 2 (doc. no. 24-4, at 5).  Because Bourne did not previously cite this precise statement, the court did not explicitly address whether Arruda's comments regarding a "police investigator," when construed in context, are actionable for implying that he committed a crime.  See Catalfo v. Jensen, 657 F. Supp. 463, 466 (D.N.H. 1987) (whether communication is capable of bearing defamatory meaning is issue of law to be determined by court); accord Thomas v. Tel. Pub'g Co., 155 N.H. 314, 338, 929 A.2d 993, 1015 (2007).

The context for the cited statement includes Arruda's later remarks that he was comfortable with having Bourne's charges investigated, that an investigation had followed an earlier claim by Bourne that the selectmen had forged a document, and that Arruda would not be satisfied with law enforcement officials now simply telling him not to worry about Bourne's charges.  Arruda concluded his remarks in this regard as follows:

> So I'm asking that the attorney look into it.  And if
> there is an investigation needed again – Uh what I
> really don't want to happen is something to come back
> that's not in writing.  Because I don't want to hear
> from the Sheriff's Department or the State Police or
> the Attorney General's Office that there really is
> nothing here.  No.  Uh I want you to show me that
> there is nothing here.  I want it in writing that
> there's nothing here.  And if this is false and this
> is libel, what happens to this guy?  Because what has
> happened to me stinks.

Ex. D to Am. Compl. at 11 (doc. no. 21-4, at 14).

Construing the reference to an investigation in context, the only reasonable construction of Arruda's "police investigator" comment is that he was referring to an investigation that would vindicate him in regard to charges levied against him by Bourne, not an investigation of any criminal activity by Bourne.  A reasonable listener could not construe the remarks, in context, as intending to convey an opinion that Bourne's criticizing the selectmen was a crime. Because Arruda's comments cannot reasonably be construed in context to apply to Bourne, Bourne's defamation claim based on those comments is not viable.  See Thomas, 155 N.H. at 338, 929 A.2d at 1015 ("'Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule, or tend to impair his standing in the community.'" (emphasis added) (quoting Burke v. Town of Walpole, 405 F.3d 66, 94-95 (1st Cir. 2005)).

II.  Brooks' "Threat," Rank, and Service

Bourne cites Brooks' Marine Gunnery Sergeant rank and prior service in Iraq in asserting that Brooks' pledge in June 2010 to "pick up arms" and stand with Arruda, taken together with Brooks' statements in February 2011, state a viable claim that Brooks threatened Bourne in retaliation for Bourne's protected speech in criticizing the selectmen.  In the underlying Order (doc. no. 51), this court found that Brooks' statements in June 2010 could not reasonably be construed as a threat of violence; in other words, no person of ordinary firmness would be chilled from exercising his or her free speech rights in the face of Brooks' rhetorical posturing.

"While in some instances verbal threats may suffice to constitute adverse action for purposes of a retaliation claim, whether they do in a particular case is dependent upon the specificity of the threat and the context in which it was made." Smith v. Christopher, No. 9:06-CV-1196, 2008 WL 4283519, *13 (N.D.N.Y. Sept. 16, 2008).  Neither Brooks' rank, nor his prior service in Iraq, nor comments he made eight months later (in February 2011) -- about needing space to "reload" if Bourne were to present a "Drega" situation -- alters the court's conclusion that the June 2010 statement was merely a rhetorical flourish,

uttered by a town selectman on a public stage, and not a threat of violence that could chill a person of ordinary firmness from speaking out.  Accordingly, the motion to reconsider is denied on that issue.

III. <u>Remaining Issues</u>

Defendants note that Bourne has again failed to seek their concurrence before filing the motion to reconsider (doc. no. 57).  Bourne would be well-advised to heed this court's prior warnings about the consequences of failing to comply with the local rules, to avoid such consequences in this case in the future.  <u>See</u> L.R. 1.3 ("Except as otherwise provided by law, the court may dismiss an action, enter a default, or impose other sanctions it deems appropriate, for any violation of, or failure to comply with, the local rules.").

The court has given due consideration to the remaining arguments set forth in the motion to reconsider.  The court finds that Bourne has failed to show that the underlying order was based on any error of law or fact (doc. no. 55).

<u>Conclusion</u>

For the foregoing reasons, the court denies the motion to reconsider (doc. no. 57).

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

August 4, 2011

cc:  Samuel J. Bourne, pro se
     Brian J.S. Cullen, Esq.

LBM:nmd