UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Samuel J. Bourne

   v.                                             Civil No. 10-cv-393-LM

John R. Arruda, Jr., et al.


**O R D E R**

Currently before the court is plaintiff Samuel Bourne's motion to compel discovery (doc. no. 82). Defendants have filed an objection (doc. no. 86), and Bourne has replied thereto (doc. no. 88). Also before the court is an affidavit of counsel, see Ex. 1 to Mot. to Seal (doc. no. 97-1), a group of discovery materials filed under seal for in camera review, and Bourne's response to counsel's affidavit (doc. no. 99). See Order (doc. no. 94) (directing counsel to file affidavit and to submit discovery materials for in camera review). In addition, the parties have filed a number of nonconforming documents, which assert matters generally relating to the motion to compel. See Pl.'s Supp. to Mot. to Compel (doc. no. 95); Defs.' Obj. to Pl.'s Supp. (doc. no. 98); Pl.'s Reply to Defs.' Obj. (doc. no. 102); and Defs.' Response to Pl.'s Resp. to Mot. (doc. no. 104).

Background

This action is the latest in a series of cases against the Town of Madison, the selectmen, and others associated with the Town, filed by Bourne. See, e.g., Bourne v. Town of Madison, No. 05-CV-365-JD (D.N.H. May 12, 2010), aff'd, No. 10-1718 (1st Cir. May 31, 2011) ("Bourne I"); Bedrock Realty Trust v. Town of Madison, No. 08-E-0027 (N.H. Super. Ct., Carroll Cnty.), aff'd, No. 2010-0091 (N.H. Nov. 18, 2010) ("Bourne II"); Bourne v. Town of Madison, No. 09-CV-00132 (N.H. Super. Ct., Carroll Cnty. Dec. 14, 2009) ("Bourne III"). In Bourne I, Bourne II, and Bourne III, Bourne named as a defendant Robert King, a former member of the Town Road Study Committee; King is not a party to the case at bar. Bourne's theory of the instant case is that defendants, in part influenced by persons including King, harbored malice towards Bourne when selectmen made statements about him at meetings held on June 9, 2010, and February 22, 2011. The defamation claims in this case relate to Selectman Arruda's June 9 statement about Bourne altering a document, and Selectman Brooks's February 22 allusion to Carl Drega, when speaking about a threatened foreclosure on Bourne's property and Town Meeting.

Bourne served one set of interrogatories and two sets of document production requests on defendants in this case. In response, defendants produced documents, provided answers, and also asserted objections and privileges, as discussed below.

2

Bourne has moved to compel complete responses to the interrogatories and to Document Production Request Nos. 2-6, 10, 11, and 14-16 in his First Request for Production of Documents (doc. no. 82-8) ("First DPR"), and Request Nos. 1-20 in his Second Request for Production of Documents (doc. no. 82-16) ("Second DPR").  Bourne has generally charged defendants with discovery abuse and spoliation of evidence, and he seeks an order allowing him, at defendants' expense, to engage a computer expert to locate missing documents in defendants' computers.

## Discussion

I.   Nonconforming Documents (doc. nos. 95, 98, 102, and 104)

This court has discretion to control its docket and may strike nonconforming documents.  See Horstkotte v. Wrenn, No. 08-CV-61-JL, 2008 WL 2953540, *2 (D.N.H. July 29, 2008); see also LR 1.3 & 5.2.  Here, plaintiff and defendants have both filed a number of documents, generally relating to ripe, fully briefed, nondispositive motions, without filing any motion requesting the court's leave to depart from the ordinary briefing schedule.  See generally LR 7.1(e)(2) & (3).  The parties' layering of nonconforming filings has resulted in a cluttered docket, unnecessarily complicating the disposition of a discovery motion by requiring the court to follow trails of filings not directly linked to the instant motion.  Henceforth,

nonconforming filings may be stricken, and repeated failures to abide by the rules may result in sanctions on the offending party or attorney. See Fed. R. Civ. P. 11(c); LR 1.3 & 5.2.

## II. Motion to Compel

### A. Standard

Rule 26(b)(1) allows discovery of any non-privileged matter that is relevant to any party's claim or defense, see Fed. R. Civ. P. 26(b)(1); parties seeking broader discovery of matters "'relevant to the subject matter'" in the action are required to show good cause to support the request. In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26(b)(1)).

The court must limit the scope or frequency of discovery if the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii). Specifically, as to discovery of electronically stored information, the court may order discovery of such information that is otherwise shown not to be reasonably

4

accessible because of undue burden or cost, only if the requesting party shows good cause for such discovery. See Fed. R. Civ. P. 26(b)(2)(B).

Rule 37(a) allows for motions to compel discovery. See Fed. R. Civ. P. 37(a). The party moving to compel discovery over an adversary's objection bears the burden of showing that the information is relevant, see Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005), and that the answers are incomplete or evasive. See Vaughn v. Bernice A. Roy Elem. Sch., No. 05-cv-223-JD, 2007 WL 1792506, *1 (D.N.H. June 19, 2007). The party resisting the motion bears the burden of establishing an applicable privilege and showing that it has not been waived. See Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011); FDIC v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000).

    B.    Document Production Requests

        1.    Privilege Log

The court has reviewed each document listed in the privilege log as well as matters asserted in Attorney Cullen's affidavit and in Bourne's relevant filings. The privilege log accurately identifies each listed document and characterizes

each as protected by evidentiary privileges, including attorney-client privilege,[1] as discussed below.

### a. Attorney-Client Privilege

Claims of evidentiary privilege in this case are determined in accordance with New Hampshire law. See Lluberes, 663 F.3d at 23 (citing Fed. R. Evid. 501). Under New Hampshire's attorney-client privilege rule, a client may prevent the disclosure of confidential communications made for the purpose of facilitating the provision of legal services. See N.H. R. Evid. 502(b); Ettinger v. Town of Madison Planning Bd., 162 N.H. 785, 789, 35 A.3d 562, 566 (2011) ("attorney-client privilege is [a] . . . rule allowing the attorney or client to withhold information shared in the course of the attorney-client relationship"). A communication is "confidential" if it was not intended to be disclosed to third parties other than those to whom "disclosure is made in furtherance of the rendition of professional legal services to the client," or as otherwise reasonably necessary for the transmission. N.H. R. Evid. 502(a)(4).

---

[1] Because the court finds that the documents at issue are shielded from discovery by the attorney-client privilege and common interest doctrine, the court does not address whether the documents may also be protected attorney work product.

### b. Common Interest Doctrine

Embedded within New Hampshire's attorney-client privilege is the common interest rule, which preserves the confidentiality of privileged information, if disclosures are made to certain third parties and their attorneys, concerning a matter of common interest, in a pending action. See N.H. R. Evid. 502(b)(2) (privilege shields communications between client, client's representative, or client's lawyer and another party's lawyer concerning "a matter of common interest" in pending action); see generally 4 Gordon MacDonald, Wiebusch on N.H. Civ. Practice & Proc. § 22.21[11], at pp. 22-30 to -31 (3d ed. 2010); see also Cavallaro v. United States, 284 F.3d 236, 250 (1st Cir. 2002) (applying federal law) ("The common-interest doctrine prevents clients from waiving the attorney-client privilege when attorney-client communications are shared with a third person who has a common legal interest with respect to these communications, for instance, a codefendant."). The common interest doctrine extends protection to documents shared in joint defense arrangements; the doctrine allows "'attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege.'" Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 93 (D. Mass. 2002) (citation omitted) (discussing common interest doctrine

7

under federal law). Notably, a "written agreement is not a prerequisite for invoking the common interest doctrine." Id. ("parties seeking to invoke the exception must establish that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders").

Applying these rules here, the court finds that defendants properly invoked the attorney-client privilege as to each document, or the redacted portion thereof, that they withheld from Bourne. The documents were intended to be confidential and generally express the type of thought-processes, strategic planning, and solicitations and renditions of professional advice between counsel, clients, and client representatives that fall within the scope of the privilege. See generally Hampton Police Ass'n, Inc. v. Town of Hampton, 162 N.H. 7, 15-16, 20 A.3d 994, 1001-02 (2011); see also N.H. R. Evid. 502(a)(2) ("representative of a client" includes persons authorized to obtain professional legal services for client). To the extent that the emails were distributed to persons not specifically denominated as the client or his or her attorney or a partner or associate (e.g., Attorney Michaud), the distribution list consists exclusively of co-defendants, client representatives, or counsel for co-defendants involved in joint defense arrangements, concerning matters of common interest, such that the disclosure did not waive the privilege. For example, King,

8

who was Attorney Cullen's and Attorney Walker's client, shared an email discussing strategic plans with his co-defendants (the selectmen) and their common counsel (Attorney Cullen), concerning a matter of common interest (responding to Bourne), during pending litigation.[2]  That document and others in the privilege log is a protected attorney-client communication, and its privileged status has not been waived.  Because Bourne has failed to show any compelling need for overcoming the privilege as to any documents listed in the privilege log, Bourne's motion is denied to the extent that he seeks access to such documents.

    2.    <u>First DPRs (doc. no. 82-8)</u>

As to the specific requests at issue in Bourne's First DPRs, the court issues the following rulings:

First DPR Nos. 2 and 15-16:  Denied.  Plaintiff has not shown that the responses were evasive or incomplete.

First DPR No. 3:  Denied.  Attorney-client privilege applies, and Bourne has not shown any compelling need for overcoming the privilege.

First DPR Nos. 4-6, 10-11 and 14:  Denied.  Plaintiff has failed to place any time limit on the request for records and

---

[2] The court in <u>Bourne I</u> did not rule on the application of the common interest doctrine to certain emails exchanged between King and the selectmen, as that issue was raised belatedly in a motion to reconsider.  <u>See</u> <u>Bourne I</u>, Order, slip op. at 9 n.4 (doc. no. 80) (D.N.H. Mar. 27, 2007).

other materials relating to the May 27 letter and the June 9 and February 22 meetings, and, in general, discovery into the matters asserted in the May 27 letter far exceeds the scope of permissible discovery in this case.

By the same token, the request for emails to and from King, a one-time member of the Town's Class VI Road study committee, and the requests for police files and billing records are not reasonably calculated to lead to the discovery of evidence relevant to any issues remaining in this case, and requests for all records sent or received by defendants in the thirty days before and after the selectmen's meetings, and for all documents sent or received by defendants related to Carl Drega and/or possible foreclosure of plaintiff's Madison property, are overbroad and unduly burdensome, relative to the issues remaining in this case.

Bourne's assertion that the requested information may lead to the discovery of impeachment materials provides no basis for allowing such broad discovery into extraneous matters. See In re Bextra & Celebrex Mktg. Sales Practices. & Prod. Liab. Litig., 249 F.R.D. 8, 12 (D. Mass. 2008) (in balancing benefits and burdens of discovery, information sought only for impeachment purposes is not given substantial weight relative to burdens associated with production). To the extent that the potential impeachment would address only collateral matters

10

asserted by the witnesses, that is, matters not relevant to any fact of consequence in this case, Bourne would not be allowed to use such extrinsic evidence at trial. See Saalfrank v. Town of Alton, No. 08-CV-46-JL, 2010 WL 839884, *6 (D.N.H. Mar. 5, 2010) ("'It is well established that a party may not present extrinsic evidence to impeach a witness on a collateral matter.'" (quoting United States v. Catalan-Roman, 585 F.3d 453, 468 (1st Cir. 2009))). Accordingly, weighing all of the relevant factors, the court finds that the benefit of the discovery is outweighed by the burden on defendants. See In re Bextra, 249 F.R.D. at 12.

3.  Second DPRs, Nos. 1-19 (doc. no. 82-16)

Bourne's Second DPRs, Nos. 1-19, seek all records of communications beginning in August 2002 through the present between defendants and a set of persons, including persons disclosed as potential witnesses by defendants. Defendants' response to those requests was, in effect, an assertion that all non-privileged, discoverable documents in their possession had already been produced, and that each of Bourne's requests was overbroad, unduly burdensome and not reasonably calculated to yield evidence relevant to any claim or defense.

Bourne's requests are not focused in time to the claims remaining in this case, or limited in scope, insofar as they cover all communications with the listed persons, through the

date of defendants' discovery responses. As such, the requests are overbroad, and the burden of responding to them exceeds the likely benefit, considering the issues remaining in this case.

To the extent Bourne seeks such evidence to impeach the witnesses as to issues that are not relevant to the claims and defenses in this case, such extrinsic evidence could not be used at trial for that purpose, see Saalfrank, 2010 WL 839884 at *6. The courts find that the burden of such discovery here outweighs any benefit, when all relevant factors are weighed. See In re Bextra, 249 F.R.D. at 12. Accordingly, the motion is denied as to each document production request at issue.

### C. Appointment of Computer Expert

In his Second DPR No. 20, Bourne has specifically asked for access to defendants' personal computers, the Town computer, and all "computer records, hard drives, backup servers, online providers, and/or any other electronic retention methods," so that Bourne and his computer expert might search for all electronic evidence not already disclosed to Bourne or produced by defendants. As a justification for seeking carte blanche access to their computers, Bourne has pointed to other documents he has discovered through other means, the parties' litigation history in which defendants have not produced all documents at the time when production was required, and defendants' statement

12

in this case that immediately after the June 9, 2010, selectmen's meeting, Selectman Arruda threw out the handwritten notes that he had prepared for use in that meeting.  See Defs.' Ans. to 1st DPR No. 15 (doc. no. 82-8).  Defendants objected to the request for carte blanche access and have asserted that they have already produced all non-privileged documents, responsive to plaintiff's requests, which are relevant to the remaining issues in this case.  They characterize Bourne's accusations of discovery abuse as meritless and assert that Bourne's request for access to all of their computers and electronic files is not justified by any showing of good cause or need.

With respect to the discovery of electronic information in this case, Bourne's accusation of discovery abuse is speculative.  The stray documents Bourne asserts were found in 2009, several years after he had requested them through discovery in prior litigation, or otherwise obtained by Bourne, are not relevant to the issues here.

Similarly, the contempt finding in Bourne I concerned counsel's unjustified delay in failing to produce unredacted documents, pursuant to a prior court order granting a motion to compel, see Bourne I, Order, slip op. at 5 & 10 (doc. no. 80) (D.N.H. Mar. 27, 2007).  The court in Bourne I did not make any finding that defendants, in bad faith or otherwise, had destroyed documents or deleted electronic files.  The Bourne I

contempt finding thus provides no basis for finding that such misconduct has occurred in this case.

Finally, defendants' statement that Arruda threw out personal, handwritten notes after a selectmen's meeting months prior to the filing of this action, does not substantiate a claim that defendants likely deleted, hid, or otherwise failed to produce any electronic records requested by Bourne here. That frank admission of a failure to retain handwritten notes after a public selectmen's meeting does not corroborate Bourne's accusation that defendants' have engaged in any chicanery or other misconduct in this case, with respect to the discovery requests at issue.

Bourne has not provided this court with any reason to doubt defendants' assertion that, in this case, they have produced all nonprivileged material requested by Bourne in their possession, relevant to the claims or defenses in this action, and that there are no other such documents that would be found through the computer search he has proposed. Accordingly, the court denies Bourne's request for an order allowing his expert to have access to defendants' computers, to hunt for allegedly hidden or deleted electronic files, at defendants' expense. See Williams v. Mass. Mut. Life Ins. Co., 226 F.R.D. 144, 146 (D. Mass. 2005) (declining to appoint expert in computer forensics to help confirm speculative conjecture that certain email exists).

D.   Interrogatories

Bourne also requests an order directing defendants to provide complete responses to his interrogatories. Attached to the motion is an email that raised one issue concerning the interrogatories that the parties resolved without court intervention. See Email from Bourne to Atty. Cullen, Sept. 13, 2011, 4:12 p.m. (doc. no. 82-1).

To the extent that Bourne is contending that all answers to interrogatories are deficient (see Ex. 5, Def. Brooks's Responses to 1st Set of Interrogs. & Def. Arruda's Responses to 1st Set of Interrogs. (doc. no. 82-9)), the court denies the motion. The court finds that the responses at issue are neither evasive nor incomplete (Nos. 1-2, 8, 10 and 12), and the requests at issue are overbroad and unreasonably burdensome (Nos. 3-4, and 11) and not reasonably likely to lead to the discovery of admissible evidence (Nos. 5-6).[3]

Moreover, the motion to compel answers to Interrog. Nos. 7 and 9, which sought disclosure of all witnesses and production of all documents to be used at trial or with dispositive motions, is denied because defendants are already subject to the disclosure requirements set forth in Fed. R. Civ. P. 26 and will be required to identify witnesses and exhibits in accordance

---

[3] The interrogatories served on Brooks and Arruda are essentially identical; only question No. 8 differs in the two sets. The rulings herein apply to both sets of interrogatories.

15

with the court's scheduling orders.  Any exhibits intended to be filed with defendants' dispositive motions will be provided to plaintiff when such motions are served and filed, and plaintiff would be free to request additional time to respond to such motions, or to assert a need for additional discovery, see, e.g., Fed. R. Civ. P. 56(d).

III. Costs and Fees

Rule 37(a)(5)(B) authorizes the court to award attorney's fees and costs to the party opposing an unsuccessful discovery motion.  The court may not order payment of fees and costs if the motion was substantially justified or if other circumstances make an award of expenses unjust.  See Fed. R. Civ. P. 37(a)(5)(B).  On balance, the court finds that Bourne's pro se status and the relative complexity of the privilege issues renders the motion substantially justified, and makes an award of expenses unjust at this time.

Conclusion

For the foregoing reasons, Bourne's motion to compel (doc. no. 82) is DENIED in all respects. The parties shall bear their own costs and fees.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

May 3, 2012

cc: Samuel J. Bourne, pro se
    Brian J.S. Cullen, Esq.

LBM:nmd