```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Samuel J. Bourne

   v.                                               Civil No. 10-cv-393-LM
                                                              Opinion No. 2013 DNH 003

John R. Arruda, Jr., et al.


**O R D E R**

Currently before the court is the motion for summary judgment (doc. no. 154), filed by defendants, John R. Arruda, Jr., Michael Brooks, and the Town of Madison, New Hampshire ("Town"), seeking summary judgment on all claims remaining in this defamation case. Plaintiff, Samuel J. Bourne, opposes the motion, see Pl.'s Obj. (doc. no. 165), and has filed a surreply in response to defendants' reply to his objection. See Reply (doc. no. 167); Surreply (doc. no. 170). Also pending are the parties' pretrial statements, proposed jury instructions, proposed voir dire, and motions in limine and objections. See Doc. Nos. 171-89. For reasons set forth below, the motion for summary judgment is granted, the pretrial matters (doc. nos. 171-89) are moot, and the clerk is directed to close the case.

Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer definite, competent evidence to rebut the motion," and "cannot rest on conclusory allegations, improbable inferences, [or] unsupported speculation."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (internal quotation marks and citation omitted).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."  Id.

Discussion

Two claims remain in this case: (1) the claim that Arruda defamed Bourne at a June 2010 Town selectmen's meeting by implying that Bourne had engaged in deceit by altering a town roadway agreement; and (2) the claim that Brooks defamed Bourne at a February 2011 Town selectmen's meeting by saying that Brooks was worried about a "Drega situation," in reference to Bourne.  The court considers each statement separately with respect to issues raised in the motion for summary judgment.

I.   Arruda's Statement

Arruda is charged with defamation for the following statement:  "We met in the court of law, after [Bourne] had altered a town document.  A Class VI (roadway) was – altered.  Board of Selectmen didn't pick it up, because we never figure our documents would ever be altered."  Town Board of Selectmen Mtg., June 9, 2010.  Ex. 3 to Arruda Dep. (Ex. D to Pl.'s Obj. (doc. no. 165-5, at 59-60)).

Bourne contends that the statement is false in that his lawyer, Attorney Judith Reardon, drafted the agreement, making the agreement at issue her work, not an altered "town document." Bourne further contends that the statement is capable of a defamatory construction, in that it implies he engaged in fraud or deceit by "alter[ing] a town document."

A.  Public Figure Status

Defendants contend that, with respect to Arruda's statement, Bourne is a "limited purpose" public figure required to prove that Arruda spoke with "actual malice," in accordance with N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964). That case stands for the proposition that, to recover for reputational harm, a plaintiff who is a public figure must make a showing that is more onerous than merely proving negligence; plaintiffs in such cases, to prove a defamation claim, must show that the defendant acted with "'actual malice.'" Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 12 (1st Cir. 2011) (quoting N.Y. Times Co., 376 U.S. at 279). "Actual malice" requires a showing that the statement was made with "'knowledge that it was false or with reckless disregard of whether it was false or not.'" Lluberes, 663 F.3d at 12 & n.2 (quoting N.Y. Times Co., 376 U.S. at 279-80).

A private citizen may be deemed a "limited purpose public figure" if he "'voluntarily injects himself or is drawn into a particular public controversy and . . . becomes a public figure for a limited range of issues.'" Lluberes, 663 F.3d at 13 (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974)). The "'limited range of issues'" is identified 'by looking to the

4

nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'" Lluberes, 663 F.3d at 13 (quoting Gertz, 418 U.S. at 352).

There is no dispute regarding the context in which Arruda spoke the words that Bourne alleges were defamatory. Arruda was discussing court cases and matters at issue in Bourne's letter to a newspaper editor, which Arruda deemed libelous. In the letter at issue, Bourne had charged that Town selectmen, including Arruda, had "produce[d] a forged cover letter to a Class VI road liability agreement," that Arruda had deceived the public, and that town officials had engaged in discovery abuse and the spoliation of evidence. See Letter to Editor, Conway Daily Sun (June 4, 2010) (Ex. to Defs.' Mot. for Summ. Jt. (doc. no. 154-13, at 4)). Bourne, by sending that letter to a local newspaper for publication, plainly thrust himself into the public arena with respect to the issues raised in the letter. The court finds no genuine issue of material fact regarding Bourne's "limited purpose public figure" status, with respect to Arruda's comments responding to Bourne's letter to the editor. Accordingly, to prove the claim against Arruda, Bourne must show that Arruda's comments were made with "actual malice," N.Y. Times Co., 376 U.S. at 279, i.e. with knowledge that the

statements were false, or with reckless disregard to their truth or falsity.

### B. Actual Malice

Bourne offers an affidavit of his former counsel, Attorney Reardon, as well as documents marked as exhibits at Arruda's deposition, to support his claim that Arruda defamed him by stating that "Bourne" had altered a "town" document. Attorney Reardon's affidavit states that (1) she was acting as Bourne's lawyer in preparing an agreement on Bourne's behalf, and (2) she "used language from the Town's version" of the roadway agreement, given to her by Bourne, in creating a new agreement for his use. Aff. of Reardon (Ex. A to Pl.'s Obj. (doc. no. 165-2)). That Bourne obtained an original document from the Town and gave it to Attorney Reardon, who modified it for him before Bourne sent his counsel's draft back to the Town, is undisputed here; and orders issued in cases involving Bourne recount essentially those facts. See, e.g., Bourne v. Town of Madison, No. 05-CV-365-JD (doc. no. 104), 2007 DNH 84, slip op. at 4 (D.N.H. June 29, 2009) (Bourne "mailed the 'revised waiver' back to the selectmen"); Bedrock Realty Trust v. Town of Madison, No. 08-E-0027, slip op. at 2 (N.H. Super. Ct., Carroll Cnty. Dec. 7, 2008) ("Bourne, or someone acting on his behalf, altered the [Class VI roadway] agreement to preclude members of

6

the public from passing over the road."). Arruda's statement that Bourne altered a town document, under the undisputed circumstances here, provides no basis upon which the court could find proof of actual malice on Arruda's part. Cf. Gray v. St. Martin's Press, Inc., 221 F.3d 243, 251-52 (1st Cir. 2000) ("Recklessness . . . can be shown by proving that the defendant actually had a 'high degree of awareness of . . . probably falsity, but mere negligence in conducting an investigation or weighing the evidence is not enough." (citations omitted)).

The court thus fails to find even a scintilla of evidence to support the claim that Arruda acted with actual malice in making the statement at issue. Accordingly, the court concludes that Arruda is entitled to judgment as a matter of law on the issue of actual malice, and grants defendants' motion on that issue.[1]

## II. Brooks's Statement

### A. Background

Bourne claims that Brooks defamed him in a Town selectmen's meeting on February 22, 2011, by stating, in an open exchange with Town Meeting Moderator George Epstein, that Brooks was worried about Bourne presenting a "Drega situation," if he were

---

[1] In light of the court's finding on actual malice, it need not consider defendants' argument that a privilege provides a further ground for granting summary judgment in Arruda's favor.

to appear at the March 2011 Town Meeting. Brooks's allegedly defamatory February 22 statement, in context, is as follows:

> [Brooks:] In a general statement, word of caution – I speak for myself, not the Board necessarily – uh, some adverse rulings have come down in the, um, several Bourne litigations – not the ones that we're involved with, but he had filed actions in Federal Court against his mortgage company, et cetera, et cetera. Uh, the judge dismissed everything so that foreclosure can commence –
> . . . .
> [Brooks:] . . . There's one charge against the title company, but the bank is cleared to foreclose, and I just bring that to your attention in the event that .
> . . .
> . . . .
> [Brooks:] I'm trying to be prepared for . . .
> . . . .
> [Brooks:] Well, I just – I worry about a Drega situation is what I'm talking about, as far as –
>
> [Epstein:] Gotcha.
>
> [Brooks:] -- having your head, you know, on your shoulders if you see some angry dude walking through the door.
>
> [Epstein:] Thank you. No, I appreciate that.
>
> [Brooks:] And I'm going to have the stage about four feet away from the wall so if we do need to jump down behind it we can.
>
> [Epstein:] Right. I'm looking for you big guy.
>
> [Brooks:] So we –
>
> [Epstein:] Uh, but understood, thank you.
>
> [Brooks:] -- we'll have a space to cover ourselves to reload.
>
>     (raps [Arruda] on arm with fist)

[Arruda: (laughter)]

[Brooks:] Probably nothing will happen, but . . . .[2]
Town Board of Selectmen Mtg., Feb. 22, 2011. Ex. 4 to Arruda Dep. (Ex. D to Pl.'s Obj. (doc. no. 165-5, at 70-71)). Undisputed is that the "Drega" comment was a reference to Carl Drega, a man with a history of conflict with government officials concerning his property, who gunned down a judge, a newspaperman, and two state troopers and also wounded three others in a northern New Hampshire community in 1997, before police shot and killed him.[3]

Brooks has asserted in an affidavit that at the time he expressed his views at the February 2011 selectmen's meeting, he was aware of the following facts, the truth of which is not in dispute: (1) Bourne had been involved for more than seven years in state and federal litigation against Town officials and

---

[2] Omitted from the court's excerpt of the transcript are statements of Madison Town Meeting Moderator George Epstein, which are not at issue.

[3] Defendants' brief sets forth the following additional facts about Drega, which Bourne has not disputed: (1) Drega was embroiled in litigation for more than a decade over local efforts to exert control over his property; (2) when state and local officials took legal action against Drega, he responded by filing suits against local officials, naming them personally; (3) Drega contacted local newspapers to publish his plight; (4) Drega risked losing his property altogether; and (5) Drega had displayed a weapon to those he considered to be encroachers. See Defs.' Br. in support of Mot. for Summ. J. (doc. no. 154-1), at 19.

others, relating to Bourne's property in Madison; (2) the New Hampshire Supreme Court had recently affirmed the dismissal of Bourne's claims in one such consolidated action; (3) Bourne had written letters to the editor, published in a local paper; (4) Bourne had suffered adverse rulings in late 2010 and early 2011; and (5) Bourne owned a handgun, which he had displayed in a holster on one occasion in 2003, when he turned away snowmobilers seeking to cross his land. See Aff. of Brooks, Ex. to Defs.' Mot. for Summ. Jt. (doc. no. 154-18, at 1-2). It is also undisputed that Bourne's letters to the editor and lawsuits have named Town officials and others by name, that the letters and lawsuits have included allegations of forgery and claims that, in particular, Madison resident Robert King has attempted to conceal or destroy evidence, and defendant John Arruda has deceived the public.

    B.   Opinion

In general, a statement of opinion, no matter how defamatory, is not actionable, unless the statement implies the existence of facts that can be proven true or false. See Gray, 221 F.3d at 248 (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-20 (1990)). "[T]he cases are likely to protect a statement as 'opinion' where it involves expressions of personal judgment, especially as the judgments become more vague and

subjective in character. . . . '[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.'" Gray, 221 F.3d at 248 (citations omitted). "Whether a given statement can be read as being or implying an actionable statement of fact is itself a question of law to be determined by the trial court in the first instance, considering the context of the publication as a whole." Nash v. Keene Publ'g Corp., 127 N.H. 214, 219, 498 A.2d 348, 351 (1985). If an average reader could reasonably understand the statement to imply a defamatory fact, summary judgment must be denied. Id., 127 N.H. at 219, 498 A.2d at 352.

    The precise language used by Brooks, together with the context in which he spoke, expresses Brooks's opinion that Bourne could present a threat to public safety, an opinion which, Brooks made clear at the outset, was not necessarily shared by others ("I speak for myself, not the Board necessarily"). The court previously ruled that it was plausible that Brooks's statement could constitute defamation. See Order (doc. no. 55). Based upon the undisputed record now before the court, the court revisits that ruling.

11

In its previous order, the court gave a broad reading to the rule that permits a defamation action where a defamatory opinion could imply the existence of defamatory facts. <u>Cf. Milkovich</u>, 497 U.S. at 21 (opinions that imply objectively verifiable defamatory facts are actionable). A defamatory opinion is actionable "'only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.'" <u>Levinsky's Inc. v. Wal-Mart Stores, Inc.</u>, 127 F.3d 122, 127 (1st Cir. 1997) (quoting Restatement (Second) of Torts § 566 (1977)). "Thus, a statement is normally not actionable unless it contains an objectively verifiable assertion." <u>Levinsky's</u>, 127 F.3d at 127. Where the statement is one of conjecture or surmise, it is not actionable. <u>Gray</u>, 221 F.3d at 248.

Here, while Brooks's statement may be construed as conveying Brooks's view that Bourne could be angry, dangerous, or capable of violence, that view is an opinion, and is not an objective fact capable of being proven true or false. The nature and context of Brooks's statement illustrates that he was worried about a possibility (which he admits was not likely) that a citizen whom he described as the subject of a potential foreclosure could act violently in the future. This is conjecture on top of surmise. Moreover, Brooks made no other statement that could reasonably be understood to imply that

12

there were any undisclosed, objective, defamatory facts underlying his opinion.  Cf. Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 510 (1st Cir. 2002) (defendant's "statement is merely his own speculation[;] [n]o person could reasonably understand that statement to imply that [defendant] had actual knowledge of additional incidents or complaints [of child abuse]").  Had Brooks, for example, included a statement implying he had knowledge of additional objective facts, other than the adverse rulings and potential foreclosure, to support his opinion, or that he was uniquely situated to know the facts about Bourne, the case might properly be decided by a jury, but that case is not this one.  Cf. Riley v. Harr, 292 F.3d 282, 290 (1st Cir. 2002) (in Milkovich, author informed his readers he was in "'a unique position' to know that the coach had lied because he had personally observed the relevant events" (quoting Milkovich, 497 U.S. at 5 n.2)).

Bourne offers the affidavits of witnesses Michael and Donna Veilleux, who assert that they found offensive and/or frightening Brooks's "claim[]" that Bourne "would conduct a 'Carl Drega' episode," and that they believed that the claim about Drega damaged Bourne's reputation.  Affs. of Michael and Donna Veilleux, Exs. B-C to Pl.'s Obj. (doc. nos. 165-3 and 165-4).  The Veilleux affidavits focus on Brooks's opinion about

13

Bourne in assessing the impact on Bourne's reputation; they do not show that there is a triable issue as to whether any facts, stated or implied by Brooks, were defamatory. Bourne has provided no proof that any witnesses were privy to gestures or other aspects of Brooks's demeanor or tone, not otherwise recorded in the transcript, that could have communicated a false statement of defamatory fact about Bourne. Having reviewed the entire record and revisited the question of whether the statement constitutes actionable defamation, the court concludes that defendants are entitled to judgment as a matter of law on this claim.

To be clear, there is no dispute that Brooks's stated opinion was inflammatory, and witnesses have asserted that it was both defamatory and offensive. The First Amendment, however, protects the utterance of even the ugliest opinions, if they cannot reasonably be understood to imply defamatory facts, see Gray, 221 F.3d at 248. Such opinions are simply not actionable, see Nash, 127 N.H. at 219, 498 A.2d at 351. In light of the fuller record generated through discovery and filed in connection with the summary judgment motion, the court concludes that the Drega reference is an opinion, which cannot reasonably be understood in context to state or imply any undisclosed, provably false fact about Bourne. The court thus

finds no basis upon which a jury could reasonably conclude that any false factual statement by Brooks defamed Bourne. For that reason, the court grants the motion for summary judgment on the claim against Brooks.[4]

III. Town Liability

Bourne has alleged that the Town is liable for Arruda's and Brooks's conduct. Finding that Bourne has offered no evidence of a triable issue as to the Town's direct liability, and concluding that summary judgment is proper as to the claims against Arruda and Brooks, the court grants the motion for summary judgment as to the Town.

IV. Libel Claim in Plaintiff's Brief

Bourne has asserted in his objection to the motion for summary judgment that statements in defendants' brief comparing Bourne and Drega are defamatory, and he has asserted that he should be granted leave to add those claims to this action. No pending motion seeking to add such claims is before the court;

---

[4] Because the court finds the Drega statement to be an opinion protected by the First Amendment, the court need not rule on whether Bourne must prove actual malice with respect to his claim against Brooks, or whether Brooks's comments were privileged, see Collins v. Univ. of N.H., 664 F.3d 8, 19-20 (1st Cir. 2011) (conditional privilege applied to claim against university for publishing press release implying plaintiff was dangerous, where university proceeded with reasonable grounds for believing statement's truth, and with good faith intent to alert community members to possible danger).

nor would such a motion be successful.  See McGranahan v. Dahar, 119 N.H. 758, 763, 408 A.2d 121, 124 (1979) (statements made in litigation deemed pertinent to its subject matter are not actionable).  A new action grounded in such claims would likely be deemed frivolous.

## Conclusion

Defendants' motion for summary judgment (doc. no. 154) is granted, all of the parties' pretrial filings (doc. nos. 171-89) are deemed moot, and the motions in limine are denied (doc. nos. 177-79 and 187-89) for that reason.  The clerk is directed to enter judgment consistent with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

January 8, 2013

cc: Samuel J. Bourne, pro se
    Brian J.S. Cullen, Esq.

LBM:nmd